*USDC Dist of NJ 4-FL*
*Docketing 21-CV-16397 (MCA)*

## NO. 22-

IN THE

# United States Court of Appeals for the Third Circuit

H. SCOTT GURVEY & AMY R. GURVEY,

*Appellants-Petitioner Pro Se,*

v.

HON. GLENN GRANT, ET AL., ESSEX COUNTY, M&T BANK, INC.,
SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP, REED SMITH,
AARON BENDER & DOES I-X, INCLUSIVE,

*Appellees-Respondents.*

**WRIT OF MANDAMUS PETITION AGAINST THE DNJ TO VACATE
ORDERS OF JUDGE SUSAN D. WIGENTON AFTER MANDATORY
DISQUALIFICATION BASED ON UNDISCLOSED STOCK INTEREST
IN DEFENDANT M&T BANK AND TO GRANT PRELIMINARY
INJUNCTION**

**H. SCOTT GURVEY and AMY R. GURVEY**
**PRO SE Appellants/Petitioners**
**315 Highland Avenue**
**Upper Montclair NJ 07043**
**amygurvey@gmail.com**
**PH: (973) 655-0991**

| | | |
|---|---|---|
| **Parker, Ibrahim & Berg** | **Reed Smith, LLP** | **NJ Atty General** |
| **270 Davidson Avenue** | **506 Carnegie Center** | **25 Market Street** |
| **Somerset, NJ 08873** | **Princeton, NJ 08540** | **Trenton, NJ 08611** |

**H. SCOTT GURVEY**
**AMY GURVEY**
315 Highland Avenue
Upper Montclair, New Jersey 07043
amyg@live-fi.com
PH (973) 655-0991

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____X

H. Scott Gurvey and Amy R. Gurvey,          **PETITION SEEKING A WRIT OF MANDAMUS**
Petitioner/Plaintiffs PRO SE,               **[FROM CASE NO. 21-2953 [3d Cir.]**

v.

Hon(s). Glenn A. Grant, Thomas Moore,
Wayne Richardson, Stuart Rabner, Jodi Lee Alper,
M&T Bank, Schiller, Knapp, Lefkowitz & Hertzel, LLP
Reed Smith, Aaron Bender, Respondents/Defendants

                                            **DNJ CASE NOS.**
                                            **21-cv-16397-MCA**
                                            **20-07831-cv-SDW**
                                            **18-12702-cv-SDW**

_____X

                                            **18-cv-12702-SDW-CLW**

M&T BANK S/B/M TO HUDSON CITY
SAVINGS BANK,                           :   [FROM SUPERIOR COURT OF NEW JERSEY
Plaintiff-Counterdefendant,                 ESSEX VICINAGE]

                                        :   [CHANCERY DIVISION BY REMOVAL
v.                                          DOCKET NO. F-014035-18]

                                            -

H. SCOTT GURVEY; MRS. H SCOTT           :
GURVEY, fictitious spouse of H. SCOTT   :
GURVEY; AMY GURVEY                      :
Defendants/Counterclaimants.
_____X

# INDEX TO EXHIBITS

EXHIBIT 1    Order of Third Circuit Case No. 21-2953 entered 3-22-22

EXHIBIT 2    Order of Judge Fred Wolfson Disqualifying Judge Wigenton
                 entered 2-10-22

EXHIBIT 3    Appellants' Hudson City Savings Bank Mortgage
                 and Note 4-29-02

EXHIBIT 4    M&T/SKLH filed Foreclosure Complaint Filed July 5, 2018
                 Fraudulent Attestations that no other lawsuit existed

EXHIBIT 5    18-cv-12702-SDW
                 Judge Wigenton's Order Denying Removal 3-29-19
                 with Appellants' Obj to Magistrate R&R filed 3-28-19
                 Appending Letter to Law Division

EXHIBIT 6    Letter to Law Division Chief Adm. Judge Hon. Thomas
                 Moore re eCourts docketing errors

EXHIBIT 7    20-cv-07831-SDW
                 Judge Wigenton's Order of Dec 17, 2020

EXHIBIT 8    21-cv-16397-SDW
                 Judge Wigenton's Orders Sept. 8, 2021; Sept. 14, 2021

EXHIBIT 9    Orders of Appellate Division Denying eCourts Access and
                 Viewing of Appeals Dockets to Pro Se Litigants Sept. 27, 2021

EXHIBIT 10   Transcript Chancery Hearing February 18, 2022

EXHIBIT 11   21-cv-16397 Order of March 17, 2022

H. Scott Gurvey and Amy R. Gurvey, PRO SE Appellants-Petitioners-

NJ Homeowners with a stellar reputation who had their A-1 credit rating

reduced to rubble by in-court fraud, Fair Credit Reporting Act violations [15

USC 1681] and RICO violations by non-resident defendant M&T Bank,

declare to the truth of the following statements in moving this Honorable

Court for a writ of mandamus to vacate orders of the United States District

Court for the District of New Jersey ("DNJ"), Hon. Susan D. Wigenton,

entered since 2018 based on Judge Wigenton's undisclosed stock interest in

defendant M&T Bank (reported as Hudson City Savings Bank) since 2016 and

seek a preliminary injunction to stay an illegal foreclosure sale of Appellants'

home now scheduled for May 10, 2022. [1]

---

[1] *Liljeberg v. Health Services Acquisition Corp.*, 486 US 847 (1988) holds as
follows:

"Any justice, judge, or magistrate of the United States shall disqualify
himself in any proceeding in which his impartiality might reasonably be
questioned." 28 U.S.C. § 455(a) as amended.

"In the present case, the Court of Appeals for the Fifth Circuit concluded
that a violation of § 455(a) is established when a reasonable person,
knew of circumstances creating an appearance of partiality,
notwithstanding a finding that the judge was not actually conscious
of those circumstances. Moreover, although the judgment in question
had become final, the Court of Appeals determined that under the facts
of this case, the appropriate remedy was to vacate the court's
judgment. We granted certiorari to consider its construction of § 455(a)
as well as its remedial decision. 480 U.S. 915, 107 S.Ct. 1368, 94

1

Judge Wigenton's orders must be vacated in three lawsuits involving Appellants and defendant M&T because based on the Judge's undisclosed stock interest, Judge Wigenton's impartiality could immediately be questioned in 2018 when she failed to follow removal procedure and did not maintain the case and grant removal for transfer to another judge. In 2018, Judge Wigenton had no power to enter a remand order of defendant M&T's fraudulent foreclosure action to the state Chancery court. Per unanimous decisions, Judge Wigenton lost jurisdiction to enter orders in any case between Appellants and defendant M&T Bank - 18-cv-12702; 20-cv-07831; 21-cv-16397, and all orders are voidable and subject to vacatur. 28 USC 455(b); *Rohrbach v. AT&T Nassau Metals*, 915 F. 2d 712 (3d Cir 1996). A stock interest equates with impartiality even without demonstrated bias. *Liteky v. United States*, 510 US 540 (1994); *Rohrbach v. AT&T Nassau Metals*, 915 F. 2d 712 (3d Cir 1996); *In re Kensington International*, 368 F. 3d 289 (3d Cir 2004).

However because a dire emergency was created by Judge Wigenton's breach of administrative duty, and Appellants are about to lose their home without any proper legal justification, the Third Circuit must first, by injunction and writ, vacate the remand order back to state Chancery entered

_____

L.Ed.2d 684 (1987). We now affirm."

2

on March 29, 2019, issue a stay of the sale, and then vacate the orders denying damages and injunctive relief to Appellants in the 2020 and 2021 actions.

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparably harm or injury in the absence of getting the relief sought, that the balance of equities tips in his favor and that an injunction is in the public interest. *Winter Resources National Defense Council*, 129 S. Ct. 365 (2008). All four prongs exist in the instant case hands down.

In the instant fact pattern, complete diversity existed on the face of defendant M&T's illegal foreclosure complaint filed July 5, 2018, in spite of the lawsuit being filed in the state of Appellants' residence (NJ). But because defendant M&T and its Latham, New York debt collector, Schiller, Knapp, Lefkowitz & Hertzel ("SKLH") engaged in additional violations of removal procedure by not moving for remand for 5 months and in the interim, the court did not remand the lawsuit for seven months in violation of 28 USC 1441(d), the Third Circuit has appellate jurisdiction to hear an appeal to a vacatur or reconsideration order, or to issue a writ of mandamus in aid of its appellate jurisdiction under the All Writs Act, 28 USC 1651(a). [2] Appellants choose the

---

[2] The Third Circuit noted that in *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706 (1996), the US Supreme Court underscored that "*only*

second option because of the emergent situation created, i.e., that Appellants

are about to lose their home on May 10, 2022 and cannot get an adjournment

even though they have a certified buyer because of COVID-19.[3]    Judge

Wigenton's concealed stock interest could never be earlier discovered by

Appellants until the lists of federal judges' stock interests were published by the

Wall Street Journal and the Free Law Project[4] in January 2022. Therefore, the

instant petition is timely.

Appellants argue that because Judge Wigenton had no jurisdiction to

enter any orders in 2018 or thereafter, the District of NJ was required to

maintain the foreclosure action, grant removal, assign a new judge, and hear

Appellant's duly filed answer, counterclaims, defenses, and summary

judgment motion to dismiss the illegal foreclosure with prejudice. Those rules

_____

*remands based on grounds specified in § 1447(c)*"—namely, remand orders based on
the lack of subject-matter jurisdiction [like the remand order here]—"are
immune from review under § 1447(d)." 517 U.S. 706, 712, 116 S.Ct. 1712, 135
L.Ed.2d 1 (1996) (quotation marks omitted); *see also* 28 U.S.C. § 1447(c).

[3] Appellants' opposition to the Magistrate's R&R entered March 14,
2019, was duly filed and date stamped by the DNJ Clerk's office within the
fourteen days ordered on March 28, 2019, but was subsequently docketed out
of chronological order and admittedly never considered by Judge Wigenton,
whose stock interest was unlawfully being concealed.

[4] See Our Financial Disclosure Database is Now Available to All | Free
Law Project | Making the legal ecosystem more equitable and competitive.

4

of law must remain as Appellants' remedy. Docket #3 in 21-cv-16397 seeking injunctive and declaratory relief as well as damages, asked for a new judge to be assigned based on Judge Wigenton's past acts of bias. This letter was filed even before the stock interest lists were released by in January 2022.

Appellants further argue that because Judge Wigenton had no jurisdiction to enter orders in 2018, defendant Essex County never got legal possession of the case back in 2019 for Chancery to enter a default judgment; or to engage in ongoing constitutional violations of Appellants' property interests in violation of the Fifth Amendment. Per the hearing transcript of February 18, 2022, Chancery admittedly never heard or considered Appellants' answer, counterclaims and defenses on remand that were duly filed in Appellants' priority 2017 Law Division lawsuit against defendant M&T [ESX-L-04337-17] and in the DNJ file, because investigation confirmed the entries were bundled together by eCourts as an "opposition" into a single docket entry. Chancery held "it had to go by the docket" and entered default; and then sua sponte entered a default judgment and denied a stay, despite the Appellate Division granting leave to appeal the entry of default on November 12, 2021. However, then Appellate Division denied a stay in response to the sua sponte default judgment entered the next day. While the appeal is now pending to that default judgment entered in defiance of prevailing law, it will

5

not be heard by the time the home will be lost. NJ Superior Ct., Appellate Division, A 749 21T4.

Unconstitutional protocols promulgated by defendant Essex County are established by the fact that Appellants' answer, counterclaims, and defenses germane to foreclosure were duly filed in the first priority lawsuit between the parties in the Law Division in Essex County in June 2017. ESX-L-04337-17. The documents were then before Judge Wigenton in the DNJ; but were finally mis-docketed by eCourts in the Chancery division in response to the unlawfully remanded foreclosure action, while defendant M&T was unlawfully getting a second bite at the apple.

While orders that adversely implicate the constitutional rights of a litigant especially a PRO SE litigant can never be entered sua sponte, the appeal will come too late to save Appellants' home from foreclosure. *Link v. Wabash R. R. Co.*, 370 US 626 (1962). The entire foreclosure was a sham. Appellants owe no state and local taxes, no penalties, fees, fines, or charges and in 2017, defendant M&T unlawfully began rejecting Appellants' P&I payments paid monthly like clockwork to create the faux pretext of a default that never existed based on an admitted dispute over property taxes that Appellants did not owe.

6

Judge Wigenton's stock interest will be appreciated and her defects in removal procedure kept concealed if the state illegally sells Appellants' home in an illegal foreclosure sale, and when the entire foreclosure was comprised of acts in furtherance of a malicious conspiratorial enterprise and pattern of racketeering. It was NY bank M&T's strategy in attempting to acquire Appellants' mortgage lender Hudson City Savings Bank ("HCSB") to steal residential properties knowing that PRO SE homeowners have no access to eCourts in NJ and cannot prevent direct frivolous foreclosure actions from being opened and filed by the bank or loan servicer's attorneys. While it is true that Appellants can seek damages for these unlawful activities and abuse of process by defendants M&T and SKLH, the protocols are clearly unconstitutional in violation of the homeowners right to equal protection, and cannot be permitted to stand as part of NJ's civil practice protocols clearly against the public interest, health and welfare. *Zebrowski v. Wells Fargo Bank*, 657 F. Supp. 2d 510 (DNJ 2010).

Moreover, in admitted defiance of the Law Division orders and law of the case, Appellants' claims germane to foreclosure were never consolidated with the foreclosure action that was illegally efiled directly on the eCourts system with fraudulent certifications that "*no other lawsuit existed between the parties*". Defendant M&T never produced a single document in Law Division

7

discovery now closed since 2018 and is estopped from proving it actually is a holder in due course. The 8-year contested merger with HCSB based on defendant M&T's securities fraud and sanctions for failing to disclose a history of money laundering and consumer fraud against mortgage customers, continues and remains nonfinal. *Jaroslawicz v. M&T Bank*, 912 F. 3d 96 (3d Cir 2018), 963 F. 3d 701 (3d Cir 2021).

The foreclosure papers filed in 2018 by defendant M&T in Chancery while Appellants' Law Division lawsuit was in full force and effect for 14 months, were also never inspected by any human clerk for compliance with state law. The law as it stands does not require human inspection. In fact, the foreclosure complaint defied all of NJ's Entire Controversy Doctrine, NJ Ct. R. 4:30A, NJ's Constitution, and Appellants' HCSB mortgage contract that did not give acceleration or foreclosure as a remedy for an alleged dispute over property taxes, which here did not exist either.

Appellants owed no property taxes and were litigating tax refunds due from Montclair Township since 2011; and the Tax Court judge invited defendant M&T to join the litigation, defendant M&T declined to do so when the Tax Court judge gave assurances that no deficiency lien could be entered based on Appellants' overpayment on account. A000339-2011. Appellants' refunds were then eradicated 85% when they were forced to remain in their

8

home when they lost a certified buyer in the amount of $885,000, plus staging, legal and broker fees, all forfeited in August 2018 as soon as the illegal foreclosure documents were filed by defendants in Chancery.

The result of Judge Wigenton's illegal remand order in March, 2019, however, was that Appellants were deprived of and continue to be deprived of all constitutional access to both divisions of the Essex County courts and to due process of law in the State courts, because to date Appellants have never had a decision on the merits on their priority claims and defenses germane to foreclosure. ESX-L-04337-17. Judge Wigenton's failure to disclose her stock interest, aided and abetted the state's continuing constitutional violations and ability of defendant M&T to illegally take their home. There is no adequate remedy at law for loss of a home. And there should be no reason in law or equity that the DNJ should not be ordered to hear all claims, defenses and counterclaims in one lawsuit consistent with the Entire Controversy Doctrine, instead of having the home sold illegally and forcing Appellants then to sue after the fact for damages when they are PRO SE litigants. *Erickson v. Pardus*, 551 US 89 (2007). The Law Division was empowered to hear all law and equity claims in 2017 and resolve the case immediately; but defendants M&T and SKLH, Reed Smith and Bender would not allow the just resolution of this matter to bill frivolous fees, fines, charges and penalties to Appellants' account

that they don't owe and cannot be forced to pay. The case stands as a quasi-extortion ploy when defendant M&T should be pursuing Montclair for refunds for taxes not owed by Appellants.

In December 2021, Appellants were noticed by the Appellate Division of Superior Court that they will continue to be deprived of constitutional access to the eCourts system and cannot even see the appeal docket in the default judgment appeal because they are PRO SE litigants. This ruling establishes unconstitutional protocols are being promulgated against PRO SE litigants in violation of the Equal Protection Clause.

The illegal foreclosure was in fact in the exclusive jurisdiction of the federal district court all along. Congress' intent for national uniformity of decisions in the field of mortgage relief under RESPA, 12 USC §2601 required that defendant M&T's continuing fraud in false credit reporting in violation of the Fair Credit Reporting Act after proper challenges by Appellants, 15 USC 1681, and obstruction of justice before the Consumer Fraud Protection Bureau in violation of 18 USC §1002, must be addressed in the district court. Defendant M&Ts acts were clearly undertaken to prevent mortgage relief to which Appellants would have been otherwise entitled because they were never in default under their HCSB mortgage and had a stellar credit rating. *Naimoli v. Ocwen Loan Servicing*, 22 F. 4th 376 (2d Cir. 2022)

10

Unravelling facts confirm the entire foreclosure filing was a sham in furtherance of an illegal conspiratorial enterprise and pattern of racketeering to steal Appellants' home and other homes in NJ by using the eCourts system to file fraudulent or frivolous foreclosure complaints knowing PRO SE homeowners especially seniors are deprived of access to eCourts and cannot afford to defend these lawsuits. The instant case has been frivolously continued for five years by defendants.

However, in this case, a second lawsuit seeking foreclosure was always proscribed by each of Appellants' Hudson City Savings Bank ("HCSB") mortgage contract, NJ Entire Controversy Doctrine, NJ Ct. R. 4:30A and NJ's Constitution. NJ's Entire Controversy Rule requires all claims between parties emanating from the same nucleus of operative facts to be heard in one lawsuit. NJ's Constitution bequeaths to each of the Law Division and Chancery the power to grant relief in equity even in in rem proceedings.

However, in this case, defendant M&T intentionally did not file foreclosure claims in Appellants' existing Law Division lawsuit, ESX-L-04337-2017, or move for leave to do so; but instead, deployed eCourts to directly file a second proscribed foreclosure complaint in Chancery knowing that no eCourts officers would inspect the papers. These malicious acts of opening an illegal second action constitute abuse of process and wrongful state action per

11

se. These claims were never pleaded in the state actions, establishing that Judge Wigenton's subsequent *Colorado River* decisions are contrary to prevailing law and must also be vacated. *Zebrowski v. Wells Fargo Bank,* 657 F. Supp. 2d 510 (DNJ 2010). Likewise, the Fair Debt Collection Practices Act claims against the debt collector defendant SKLH under 15 USC 1692 were never before the state because defendant SKLH was never a party to either of the state lawsuits. Defendant SKLH only illegally efiled the separate foreclosure action and appended fraudulent documents and attestations that "no lawsuit existed between the parties" – blatantly false attestations including due diligence attestations sworn to by M&T and SKLH employees under oath that must be sanctioned.

In summary, because Judge Wigenton had no jurisdiction to remand the foreclosure removal action in 2019, defendant Essex County did not get the foreclosure back and had no jurisdiction to enter a default judgment sua sponte or order a *lis pendens* foreclosure sale of Appellants' home. The conflict of laws between the federal and state courts is causing Appellants severe desperation, petrification, physical injury and emotional distress and Appellant Amy Gurvey suffered a heart attack in December 2021 for fear Appellants will lose their home after five years of defendants' abuse of process and frivolous harassment. A foot of frivolous papers with the same exhibits are filed every

12

month; with the HCSB mortgage contract clearly delineating in para. 6B that only the failure to pay principal and interest constitutes a default allowing acceleration and foreclosure and no other sum. Ergo, based on defendants' own proffers, there was and remains no legal justification for the foreclosure sale, Appellants don't owe money to defendant M&T; and but for Judge Wigenton's failure to disclose her disqualifying stock interest and violate prevailing law, the case would never have been remanded.

While Appellants do have a buyer because of COVID-19, defendants M&T, SKLH, Reed Smith, and Aaron Bender, all who continue to engage in RICO violations and in-court attorney fraud and deceit, will not grant an extension of the sale or an extension pending adjudication of the state appeal. NY's Judiciary Law Section 487; *Amalfitano v. Rosenberg*, 12 NY 3d 8 (2009); 533 F. 3d 117 (2d Cir. 2007). This court must therefore enter an emergency stay of the sale by preliminary injunction; on ground that that Chancery had no jurisdiction to take back the case; and all claims between the parties duly filed in the DNJ must be heard in one court to allow for compliance with NJ's Entire Controversy Doctrine, NJ Ct. R. 4:30A and prevent further harm, injury and property prejudice to Appellants that will surely ensue from staggered and piecemeal decisions in three courts.

13

In addition, Chancery *admittedly* never considered or otherwise heard Appellants' answer, counterclaims, and defenses germane to foreclosure filed with specificity in Appellants' priority Law Division complaint filed June 17, 2017, and in the DNJ; and concededly defied Law Division's order to consolidate the state cases. Ergo, Appellants remain deprived of all constitutional access to the Essex County courts in violation of their Fifth Amendment right to due process since 2017; and now in further violation of equal protection, the Appellate Division will not grant Appellants access rights to the eCourts filing system on appeal to even see the dockets on par with the efiling and ex parte communication rights with court administrative officers granted defendant M&T and its attorneys.

The eCourts system, in effect, encourages ex parte filings and communications with court administrators by adverse parties' attorneys including attorneys for banks, loan servicers and mortgage holders, and deprives PRO SE litigant homeowners of the equal right to participate in the adjudication of those filings and to be present during ex parte communications with eCourts officers who are making prejudicial mistakes on a regular basis. [5]

---

[5] Appellants' Law Division priority 2017 lawsuit was removed from the docket twice and dismissed sua sponte, and then reinstated by Chief Adm. Judge Thomas Moore, conceding to eCourts errors.

14

The Chancery judge admitted during a February 18, 2022 hearing (transcribed) that she never read Appellants' papers, never knew there was a previous Law Division lawsuit filed by Appellants in 2017 with claims germane to foreclosure that was in full force for fourteen months in 2018 [ESX-L-04337-17]; or that the Law Division ordered consolidation of Appellants' claims and defenses germane to foreclosure when it issued a stay of its case sua sponte. Appellants claims on appeal before the state that no stay could be entered sua sponte by the Law Division to give priority adjudication to Chancery, but adjudication of Appellants' appeal will be way too late to save their home. There is no remedy at law adequate to compensate for the loss of a home, particularly not during COVID-19, and when there is no proper justification for the sale that could not have been adjudicated in the district court in 2018-2019 via mortgage settlement negotiations mandated by RESPA.

Orders seeking declaratory determinations of the unconstitutionality of the state eCourts system were before Judge Wigenton, and although also before the Law Division, were somehow mis-docketed as a single "opposition" by eCourts efiling system on remand. Chancery said "*it had to go by the docket*" although it had Appellants' papers all along, precluding a default judgment by

law. This means in essence, the law is what the state court says the law is,
whether the state is following the prevailing black letter law or not.

The eCourts system that allowed direct electronic filing of continuing
fraudulent papers and motions by defendants is contended unconstitutional. It
allowed defendants to get entry of default judgments that were fraudulently
rubber stamped by Chancery because Appellants' papers were not timely
docketed by clerks and the JEDS system Appellants are forced to use. Every
time in the instant matter since 2017, the state court did not get Appellants'
papers before an order was entered on a motion. Chancery said on the record
it did not have Appellants' answer and counterclaims on remand, when
investigation confirmed the papers were mis-docketed late by eCourts as single
entry "opposition". This demonstrates that the eCourts system aids and abets
banks, loan servicers and mortgage holders and operates to unfairly
discriminate against PRO SE homeowners in violation of the Equal Protection
Clause.

## MEMORANDUM OF LAW

# I.   VACATUR OF ALL JUDGE WIGENTON'S ORDER IS
MANDATORY BECAUSE SHE LACKED JURISDICTION TO ENTER
ORDERS BASED ON HER UNDISCLOSED STOCK INTEREST

16

1.     Judge Wigenton's stock interest was just recently made public when lists of federal judges' stock interests and other financial disclosures were published by the Wall Street Journal and the Free Law Project[6] in January 2022. Therefore, the instant petition is timely. Appellants never could previously discover the stock interest, or they would have immediately moved for recusal in 2018.  For these reasons, the instant motion is timely as a matter of law. *In re Kensington International*, 368 F. 3d 289 (3d Cir 2004)

2.     All of Judge Wigenton's rulings including her remand order to state Chancery entered March 29, 2019, and orders entered in the 2020 and 2021 lawsuit seeking damages, declaratory determinations, and injunctive relief, are subject to vacatur because the district court lost jurisdiction to adjudicate further motions once impartiality could reasonably be questioned. *Rohrbach v. AT&T Nassau Metals*, 915 F. 2d 712 (3d Cir 1996). A stock interest equates with impartiality even without demonstrated bias.  *Liteky v. United States*, 510 US 540 (1994); *Rohrbach v. AT&T Nassau Metals*, 915 F. 2d 712 (3d Cir 1996); *In re Kensington International*, 368 F. 3d 289 (3d Cir 2004). Judge Wigenton was required to recuse herself immediately in August 2018 and transfer the case to another judge in the DNJ.

---

[6] See Our Financial Disclosure Database is Now Available to All | Free Law Project | Making the legal ecosystem more equitable and competitive.

3.    It follows that because the district court had no jurisdiction to enter a remand order, Chancery never legally got the foreclosure complaint back and could not thereafter enter a default judgment against Appellants and schedule a foreclosure or *lis pendens* sale of Appellants' home.

4.    While an appeal has been filed in the Appellate Division Superior Court to vacate the Chancery Court's sua sponte default judgment, contended in defiance of state law, state court had no jurisdiction to take back or enter any order in the foreclosure on remand because Judge Wigenton had no power to enter a remand order, warranting mandamus relief from the Third Circuit.

5.    In February 2022, Judge Wigenton was formally disqualified by the Chief Adm. Judge of DNJ, Hon. Freda Wolfson in response to Appellants' motion [21-2953 (3d Cir); 21-cv-16397(DNJ)]; because the Judge had not recused herself on her own.

6.    However, all Judge Wigenton's back orders since 2018 must now be vacated as a matter of law because her concealed stock interest rendered all subsequent orders void for lack of jurisdiction. 28 USC §455(b); *Liteky v. United States*, 510 US 540 (1994); *Rohrbach v. AT&T Nassau Metals*, 915 F. 2d 712 (3d Cir 1996); *In re Kensington International*, 368 F. 3d 289 (3d Cir 2004).

18

## II.  PRELIMINARY INJUNCTION MUST BE GRANTED TO STOP THE ILLEGAL STATE FORECLOSURE SALE

7.  A plaintiff seeking a preliminary injunction must establish that he

is likely to succeed on the merits, that he is likely to suffer irreparably harm or

injury in the absence of getting the relief sought, that the balance of equities

tips in his favor and that an injunction is in the public interest. *Winter Resources*

*National Defense Council*, 129 S. Ct. 365 (2008). All four prongs exist in the

instant case hands down.

## III.  WRIT OF MANDAMUS

8.  This petition also seeks a writ of mandamus to vacate all of Judge

Wigenton's orders entered since 2018 in cases between Appellants and New

York defendant M&T Bank because the Judge's impartiality could reasonably

be questioned based on an undisclosed stock interest in defendant M&T since

2016. 28 USC §455(b); *Liteky v. United States*, 510 US 540 (1994); *Rohrbach v.*

*AT&T Nassau Metals*, 915 F. 2d 712 (3d Cir 1996); *In re Kensington International*,

368 F. 3d 289 (3d Cir 2004).

9.  Actual bias is not required to be demonstrated to vacate previous

orders. *Ibid*. Based on the undisclosed stock interest alone, the prevailing law

of the US Supreme Court and Third Circuit is that impartiality is assumed.

19

10. In addition, however, all of Judge Wigenton's orders entered since 2018 do defy the factual record and prevailing law.

11. The first remand order entered March 29, 2019 constituted reversible error per se because complete diversity existed on the face of the [illegal and fraudulent] foreclosure complaint documents filed by defendant M&T on July 5, 2018; and the district court was required to maintain the case and transfer it to another judge to hear Appellant's summary judgment claims to dismiss the foreclosure with prejudice.

12. The Third Circuit maintains appellate jurisdiction over the reconsideration or remand order or may enter a mandamus order in aid of its jurisdiction under the All Writs Act, 28 USC §1651(a); 28 USC 1441, 144(d).

13. 28 USC 1441(c) does not apply to the instant removal because there existed three defects in removal procedure – defendant M&T waited 5 months to move for remand and the court did not order remand for 7 months (all outside the 30-day statutory deadline). However, the DNJ in fact had jurisdiction to maintain the foreclosure even though it was filed in the state of Appellants' residence. *Korea Exchange Bank NY Branch v. Trackwise Sales Corp.*, 66 F. 3d 46 (3d Cir 1995); *Green Tree Servicing v. Cargille*, 662 Fed. Appx. 118 (3d Cir 2016) 28 USC1441(d).

14. The Third Circuit noted that in *Quackenbush v. Allstate Insurance Company,* 517 U.S. 706 (1996), the US Supreme Court underscored that *"only remands based on grounds specified in § 1447(c)"*—namely, remand orders based on the lack of subject-matter jurisdiction [like the remand order here]—"are immune from review under § 1447(d)." 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quotation marks omitted); *see also* 28 U.S.C. § 1447(c).

15. M&T's foreclosure complaint filed July 5, 2018, admits on its face that M&T is a New York banking corporation that only accepts service of process at its corporate headquarters in Buffalo, New York and [defendants] Harold S. Gurvey and fictitious spouse Amy Gurvey are resident New Jersey homeowners. Ergo, complete diversity existed, and along with per se violations of federal mortgage and credit statutes, Third Circuit has jurisdiction to hear a vacatur or reconsideration appeal or grant a writ of mandamus in aid of its appellate jurisdiction pursuant to the All Writs Act, 28 USC 1651(a).

16. Based on Judge Wigenton's lack of jurisdiction to enter any orders at all in 2018, however, proper disposition was for the DNJ to maintain the illegal foreclosure, assign another judge to adjudicate Appellants' answer, counterclaims and defenses and if warranted, enter summary judgment dismissing the illegal foreclosure with prejudice. *Rohrbach v. AT&T Nassau*

21

*Metals*, 915 F. 2d 712 (3d Cir 1996); *In re Kensington International*, 368 F. 3d 289 (3d Cir 2004).

17.    In addition, Congress has placed all lender and loan servicer violations of the Real Estate Settlement and Procedures Act ("RESPA") along with associated obstruction of justice or lender fraud during a Consumer Fraud Protection Bureau ("CFPB") investigation under the exclusive jurisdiction of the federal courts to maintain national uniformity of decisions. *Naimoli v. Ocwen Loan Servicing*, 22 F. 4th 376 (2d Cir 2022). All anticipated federal violations occurred in the instant fact pattern that required that the district court maintain the removal action for adjudication.

18.    Defendant M&T's added failure to remove timely challenged false notations on Appellants' credit reports in violation of the Fair Credit Reporting Act, 15 USC §1681 since 2017, were an integral part of defendant M&T's RESPA fraud. The strategic plan with defendant debt collector SKLH was to mar Appellants' A-1 credit rating by submitted false notations of "default", to prevent mortgage relief for which Appellants would have otherwise been entitled. However, in this unique fact pattern, because Appellants were never in default under the terms of their 2002 Hudson City Savings Bank ("HCSB") mortgage contract, mortgage relief and attempts at settlement of defendant M&T's frivolous claims would have been granted by the DNJ. There is no

dispute that Appellants paid and tendered principal and interest every month like clockwork, and the definition of default under para. 6B of the HCSB mortgage contract, is expressly restricted to the failure to pay P&I and no other sum. Defendant M&T in this case began rejecting Appellants' P&I payments in 2017 to create the faux pretext of a default that did not exist, which resulted in Appellants filing the priority lawsuit seeking determinations they were not in default and defendant M&T was violating the law, marring their credit rating, and breaching their mortgage contract with HCSB to harass them.

19. Furthermore, while defendant M&T alleges to have acquired Appellants' mortgage in due course during merger proceedings with HCSB (that are still ongoing), M&T produced no documents confirming due course status in Law Division discovery, now closed since 2018. Ergo, there were ample grounds to summarily dismiss the foreclosure complaint in the district court.

20. In addition, because Appellants were never in "default" as defined under the HCSB contract, defendant M&T never had the legal right to accelerate the loan or foreclose. Likewise, defendant M&T had no legal right to reject Appellants' tendered P&I payments or attempt to refund credited and cashed payments (that Appellants never accepted back) to create the faux pretext of a default that never existed.

23

21. That Appellants had a surplus of tax overpayments on account to Montclair Township, no dispute over property taxes ever existed either; but under the HCSB contract, even a bona fide failure to pay property taxes by a homeowners, only affords the loan holder the right to file a lawsuit **that is not a foreclosure action after sale by the homeowner,** or possibly a deficiency lien.

22. Empirically also relevant is that defendant M&T (not just Judge Wigenton) fraudulently concealed from Appellants Judge Wigenton's stock interest in its own bank, and from the CFPB in violation of 18 USC §1002, engaging in obstruction of justice in the RESPA investigation. *Naimoli v. Ocwen Loan Servicing*, 22 F. 4th 376 (2d Cir 2022). These claims could only be heard in the federal court and mortgage settlement relief was required to be offered by the district court.

23. "[I]t is widely accepted that mandamus is extraordinary remedy." *In re United States*, 273 F.3d 380, 385 (3d Cir. 2001). Therefore, "[a] party seeking the writ has the burden of demonstrating that its right to the writ is 'clear and indisputable.'" *Delgrosso v. Spang and Co.*, 903 F.2d 234, 237 (3d Cir. 1990), *cert. denied*, 498 U.S. 967 (1990). *See also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988), *reh'g denied*, 869 F.2d 116 (2d Cir. 1989), *cert. denied, Milken v. SEC*, 490 U.S. 1102 (1989).

24

24.    The Third Circuit has consistently held that it will issue a writ of mandamus only if it finds that "the party [seeking the writ] ha[s] no other adequate means to attain the desired relief ... [and] the court below ... committed a clear error of law [that approaches] the magnitude of ... a failure to use [judicial] power...."' *In re Sharon Steel Corp.*, 918 F.2d 434, 436 (3d Cir. 1990), *quoting Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988). The failure of a judge to disclose stock in a party to the litigation and continuing to issues orders in the absence of jurisdiction that resulted in disqualification by the Chief Adm. Judge of the Court, qualifies for mandamus relief. All prongs of the standard are met in this case; and because of defendant M&T's loan servicing violations and associated fraudulent entries on Appellants' credit reports to preclude RESPA relief, the federal court also had exclusive jurisdiction over these claims based on Congress's intent for national uniformity of decisions. *Naimoli v. Ocwen Loan Servicing*, 22 F. 4th 376 (2d Cir 2022)

25.    In the context of a motion to recuse a district judge and vacatur of orders, the governing standard is "whether a reasonable person, knowing all the circumstances, might question the district judge's continued impartiality and on what date." *In re Sch. Asbestos Litig.*, 977 F.2d 764, 781 (3d Cir. 1992). *See also, In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 343

(3d Cir. 1998), *cert. denied sub nom., Krell v. Prudential Ins. Co. of America*, 525 U.S. 1114 (1999). The court should "ask how [these facts] appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995).

26. Impartiality is assumed by a judge's ownership of stock in a party defendant from the date the stock interest is owned. Litigants and especially PRO SE litigants cannot be forced to face a judge where there is a reasonable question of his or her impartiality. Where a judge has failed to disclose a stock ownership interest in the adverse party's lender or loan servicer, as here, impartiality is assumed from the time the stock interest exists.

27. The legal effect of the continued improper failure of Judge Wigenton to disclose her stock interest in defendant M&T and recuse herself immediately in response to Appellants' removal petition, is that the court immediately lost jurisdiction or legal power to enter further orders. The law is unanimous from the US Supreme Court and Third Circuit that Judge Wigenton's past orders must now be vacated back to 2018.

28. Also in 2018, Judge Wigenton knew from public decisions in the *Jaroslawicz* cases[7] against defendant M&T, that defendant M&T was litigating

---

[7] 912 F. 3d 96 (3d Cir 2018); 963 F. 3d 701 (3d Cir 2021)

26

securities fraud claims brought by HCSB, Appellants' mortgage lender, during merger proceedings, and was sanctioned by the Third Circuit twice for failing to disclose to HCSB officers and directors, a long history of money laundering and consumer fraud against mortgage customers. It was in Judge Wigenton's equity interest, therefore, to see that the state Chancery court adjudicated defendants' illegal foreclosure complaint and not the district court, to prevent a further sanction from the Third Circuit.

29. Ensuing orders from Chancery on improper remand by Judge Wigenton, then caused immediate and emergent prejudice to Appellants. Entry of default was entered and then an immediate default judgment was entered *sua sponte* in December 2021 with an associated order of a *lis pendens* foreclosure sale. That sale is now scheduled for May 10, 2022. Appellants were able to get a buyer, but Chancery will still not grant an adjournment of the sale date, warranting a preliminary injunction to stop the sale.

30. The Appellate Division of Superior Court has agreed to hear an appeal to Chancery's default judgment, but not on expedited adjudication; and admits that Appellants cannot use eCourts to see the dockets because they are PRO SE litigants.

31. That Chancery defied Law Division's orders and never consolidated Appellants' priority Law Division complaint containing claims

27

and defense germane to foreclosure with the remanded foreclosure action, means that unconstitutional protocols against NJ's Constitution and Entire Controversy Doctrine are being promulgated by defendant Essex County. The Law Division lawsuit remains in full force and effect since June 2017, but was improperly stayed to Appellants' serious prejudice, to let the subsequent Chancery action go first out of chronological order. Chancery then defied law of the case and estoppel principles based on defendants M&T's failure to produce a single document in Law Division discovery, and defied Law Division's order to consolidate the cases.

32. Based thereon, none of Appellants' claims and defenses germane to foreclosure were ever heard in the Essex County Vicinage in violation of due process of law since Appellants' priority lawsuit was filed in 2017. Appellants have still not had one claim heard on the merits in five years. In the meantime, Chancery defied Law Division's law of the case orders, and abhorrently entered a default judgment sua sponte against Appellants' home.

33. H.R. Rep. No. 93-1453 (1974) provides that motions seeking recusal must be promptly made once the grounds are known or reasonably knowable to the party seeking disqualification. *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 236-37 (3d Cir. 2001). *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989) (the timeliness requirement "prohibits knowing

28

concealment of an ethical issue for strategic purposes"). *See also* 13A Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3550 (2d

ed. Supp. 2003). In the instant case, Appellants could not have possibly

discovered Judge Wigenton's stock interest in defendant M&T Bank until the

Wall Street Journal and Free Law Project released their lists on federal judges'

stock holdings in January 2022.

34.    Because defendant M&T Bank also fraudulently concealed Judge

Wigenton's stock interest in its own bank, sanctions must be awarded in the

form of a preliminary injunction and stay. NY's Judiciary law Section 487;

*Amalfitano v. Rosenberg*, 12 NY 3d 8(2009); 533 F. 3d 117 (2d Cir 2007). These

remedies are owed to Appellants in a quintessential corruption case.

35.    To Appellants continue to be severely prejudiced and deprived of

constitutional access to both the federal and state courts to protect their home

in violation of the Fifth Amendment of the United States Constitution.

36.    Technically the Third Circuit now has the power to enter

injunctive relief under *Ex parte Young*, 209 US 123 (1908) against state and

county officers for continued violations of federal mortgage statutes in

violation of Appellants' Fifth and Fourteenth Amendment rights under the

United States Constitution; and to determine that eCourts access must be

awarded in the state appeal compliant with Appellants' right to equal

29

protection.

**WHEREFORE**, Appellant-Petitioners PRO SE Scott and Amy Gurvey

pray for equity from this court and such other and further relief as the Third

Circuit deems just and proper under these abhorrent circumstances.

Dated: April 17, 2022

Montclair, NJ

H. SCOTT GURVEY

AMY R. GURVEY

Appellants-Petitioners PRO SE

30

# EXHIBIT 1

## ALD-100
## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### C.A. No. 21-2953

H. SCOTT GURVEY; AMY R. GURVEY, Appellants

v.

HONORABLE GLENN GRANT; ET AL.

(D.N.J. Civ. No. 2-21-cv-16397)

Present: JORDAN, RESTREPO and SCIRICA, Circuit Judges

Submitted are:

(1) Appellants' motion to replace their stay motion with a petition for a writ of mandamus;

(2) Appellants' memorandum of law in support of their motion; and

(3) Appellants' addendum to their motion

in the above-captioned case.

Respectfully,

Clerk

_____ORDER_____

Appellants Amy and H. Scott Gurvey filed a motion to stay this appeal pending disposition of a different appeal (C.A. No. 21-2142). After the latter appeal was resolved, the Gurveys moved to withdraw the stay motion and replace it with a petition for a writ of mandamus. The Clerk of this Court granted the motion to withdraw the stay motion. What remains—the request to, in effect, litigate a mandamus petition within the confines of this appeal of the District Court's September 8 and October 1, 2021 decisions—is denied as presented. If the Gurveys wish to file a mandamus petition, they must do so by initiating a new case in this Court, paying the applicable filing fee, and otherwise complying with Federal Rule of Appellate Procedure 21. As for the current appeal, if the

# EXHIBIT 2

APPEAL

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:21-cv-16397-MCA-JSA

GURVEY et al v. GRANT et al
Assigned to: Judge Madeline Cox Arleo
Referred to: Magistrate Judge Jessica S. Allen
Case in other court: Third Circuit, 21-02953
Cause: 28:1983 Civil Rights

Date Filed: 09/01/2021
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**H. SCOTT GURVEY**

represented by **H. SCOTT GURVEY**
315 HIGHLAND AVENUE
UPPER MONTCLAIR, NJ 07043
PRO SE

**Plaintiff**

**AMY R. GURVEY**

represented by **AMY R. GURVEY**
315 HIGHLAND AVENUE
UPPER MONTCLAIR, NJ 07043
PRO SE

V.

**Defendant**

**HON. GLENN A. GRANT**

represented by **STEVEN BRIKOWSKI**
NEW JERSEY OFFICE OF THE
ATTORNEY GENERAL
DOL - TORT LITIGATION AND
JUDICIARY SECTION
R.J. HUGHES JUSTICE COMPLEX
W. MARKET ST.
SUITE 2-111
TRENTON, NJ 08625
609-815-2299
Email: steven.brikowski@law.njoag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HON. STUART RABNER**

represented by **STEVEN BRIKOWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HON. THOMAS MOORE**

represented by **STEVEN BRIKOWSKI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ESSEX COUNTY BOARD OF COUNTY COMMISSIONERS**

**Defendant**

**M&T BANK, INC.**

represented by **AARON M. BENDER**
REED SMITH
136 Main Street
Suite 250
Princeton Forrestal Village
Princeton, NJ 08540
6099870050
Email: abender@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**A BUFFALO**

**Defendant**

**NEW YORK BANKING CORPORATION**

**Defendant**

**SCHILLER, KNAPP, LEFKOWITZ & HERTZEL LLP**

**Defendant**

**A LATHAM**

**Defendant**

**NEW YORK DEBT COLLECTOR LAW FIRM**

**Defendant**

**REED SMITH, LLP**

represented by **AARON M. BENDER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**AARON BENDER**

represented by **AARON M. BENDER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| 10/21/2021 | 10 | USCA Case Number 21-2953 for 9 Notice of Interlocutory Appeal, filed by AMY R. GURVEY, H. SCOTT GURVEY. USCA Case Manager Laurie (Document Restricted - Court Only) (lr) (Entered: 10/21/2021) |
|---|---|---|
| 11/04/2021 | | USCA Appeal Fees received $ 505 receipt number NEW045627 re 9 Notice of Interlocutory Appeal, filed by AMY R. GURVEY, H. SCOTT GURVEY (qa, ) (Entered: 11/04/2021) |
| 01/27/2022 | 11 | AMENDED COMPLAINT against AARON BENDER, A BUFFALO, ESSEX COUNTY BOARD OF COUNTY COMMISSIONERS, GLENN A. GRANT, A LATHAM, M&T BANK, INC., THOMAS MOORE, NEW YORK BANKING CORPORATION, NEW YORK DEBT COLLECTOR LAW FIRM, STUART RABNER, REED SMITH, LLP, SCHILLER, KNAPP, LEFKOWITZ & HERTZEL LLP, JODI LEE ALPER., filed by AMY R. GURVEY; H. SCOTT GURVEY. (Attachments: # 1 exhibit 1, # 2 exhibit 2, # 3 exhibit 3, # 4 exhibit 4)(ld, ) (Entered: 01/27/2022) |
| 02/10/2022 | 12 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Madeline Cox Arleo for all further proceedings. Judge Susan D. Wigenton no longer assigned to case. So Ordered by Chief Judge Freda L. Wolfson on 2/10/22. (aw, ) (Entered: 02/13/2022) |

# EXHIBIT 3

# FIXED RATE NOTE

_April_ 29 _____ , _2002_ ____ Montclair _____ , ___ New Jersey _____

(City)                (State)

315 HIGHLAND AVENUE, MONTCLAIR, NEW JERSEY 07043

(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 561,600.00 _____ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **HUDSON CITY SAVINGS BANK.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of __6.875___ %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6 (B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **1st** day of each month beginning on___ June _____ 1, **x** 2002. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on __May_____ 1, 2032 _____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **WEST 80 CENTURY ROAD, PARAMUS, NJ 07652** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

Each of my monthly payments for principal and interest will be in the amount of U.S. $__3,689.31_____.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Any partial prepayment must be received on the installment due date. Any partial prepayment received on other than the installment due date will be considered as received on the next installment due date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded the permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5%** of my overdue payment of principal, interest, taxes and insurance. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each montly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option, shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If a Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8 of the Security Instrument, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

## 12. FIRE INSURANCE

In the event the Borrower fails to supply fire insurance as required herein, and the Lender is unable to secure such fire insurance, then and in that event the principal sum hereof with all arrearages of interest thereon, shall at the option of the Lender, its successors or assigns, become and be immediately due and payable.

## 13. FLOOD INSURANCE

In addition to other insurance coverage called for hereunder the Borrower will supply Flood Insurance if applicable and available. If the Mortgagor fails to do so the Lender may proceed with the same rights and remedies as with other insurance.

## 14. PRIVATE MORTGAGE INSURANCE

The Lender may, at anytime during the mortgage term, and in its discretion, apply for renewal of mortgage insurance covering the Mortgage executed by the Borrower, pay the premiums due by reason thereof, and require repayment by the Borrower of such amounts as are advanced by said Lender. In the event of failure by the Borrower to repay said amounts to said Lender, such failure shall be considered a default, and all provisions of the Note and Mortgage with regard to default shall be applicable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
H. SCOTT GURVEY                 Borrower

Social Security Number 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

_____ (Seal)
GEORGE H. BUERMANN (Seal)

_____ (Seal)
AMY GURVEY                      Borrower

Social Security Number _____ 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

# EXHIBIT 4

Philip Aimutis Jr., Esq., #243622017
**SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP**
A LLP Formed in the State of New York
30 Montgomery Street, Suite 1205
Jersey City, NJ 07302
(518) 786-9069
Attorneys for Plaintiff
18-05929

| | |
|---|---|
| **M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK,** | **SUPERIOR COURT OF NEW JERSEY** CHANCERY DIVISION ESSEX COUNTY |
| Plaintiff | |
| | **DOCKET NO.: F-014035-18** |
| vs. | |
| | **CIVIL ACTION** |
| **H. SCOTT GURVEY; MRS. H. SCOTT GURVEY, fictitious spouse of H. SCOTT GURVEY; AMY GURVEY,** | **SUMMONS** |
| Defendant (s) | |

THE STATE OF NEW JERSEY TO THE DEFENDANT(S) NAMED ABOVE AND ON THE ANNEXED SERVICE LIST.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-

LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at
http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/s/MICHELLE M. SMITH
MICHELLE M. SMITH
Clerk of the Superior Court

Dated: 7/13/18

Revised
11/17/2014

## SERVICE LIST

| | |
|---|---|
| **H. SCOTT GURVEY**<br>315 Highland Avenue<br>Montclair, NJ 07043 | Current owner of the subject premises and obligor under the mortgage being foreclosed herein, which said mortgage, was duly recorded in the Essex County Register's Office, as set forth in the pleadings herein. |
| **MRS. H. SCOTT GURVEY, fictitious spouse of H. SCOTT GURVEY**<br>315 Highland Avenue<br>Montclair, NJ 07043 | Possible spouse of the record owner of the subject premises, whose interest is subordinate to the subject mortgage, pursuant to N.J.S.A. § 3B:28-3. |
| **AMY GURVEY**<br>315 Highland Avenue<br>Montclair, NJ 07043 | Co-signor under the mortgage being foreclosed herein, which said mortgage, was duly recorded in the Essex County Register's Office, as set forth in the pleadings herein. |

Philip Aimutis Jr., Esq., #243622017
**SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP**
A LLP Formed in the State of New York
30 Montgomery Street, Suite 1205
Jersey City, NJ 07302
(518) 786-9069
Attorneys for Plaintiff
18-05929

-----------------------------------------------------

| | |
|---|---|
| **M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK,** | **SUPERIOR COURT OF NEW JERSEY** CHANCERY DIVISION ESSEX COUNTY |
| Plaintiff | |
| | Docket No.: F- |
| vs. | **CIVIL ACTION** |
| **H. SCOTT GURVEY; MRS. H. SCOTT GURVEY, fictitious spouse of H. SCOTT GURVEY; AMY GURVEY,** | **COMPLAINT IN FORECLOSURE** |
| Defendant (s) | |

-----------------------------------------------------

The Plaintiff, M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK ("Plaintiff")

complaining of the defendants, by and through its attorney(s), Schiller, Knapp, Lefkowitz & Hertzel,

LLP, alleges as follows:

1.      That Plaintiff, M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK, is a

corporation duly organized and existing pursuant to the laws of the State of New York, having its

principal place of business at One Fountain Plaza, Buffalo, NY 14203.

2.      Upon information and belief, the defendants set forth in Exhibit "A" of this complaint

reside at or have a place of business at the address set forth therein or, if a corporation, it was organized

and is existing under and pursuant to the laws of the state set forth therein, and are made defendants in

this action in accordance with the interests set forth therein.

1

3.  That the United States of America, the People of the State of New Jersey, the State Tax Commission of the State of New Jersey, and all other agencies or instrumentalities of the Federal, State or a local government, if made defendants in this action, are named as defendants solely by reason of the matter set forth in Exhibit "A" of this complaint.

4.  Upon information and belief, after due inquiry Plaintiff has been unable to ascertain the marital status of H. SCOTT GURVEY and if married the proper given name of his / her spouse and therefore MRS. H. SCOTT GURVEY, fictitious spouse of H. SCOTT GURVEY is set forth herein and made a party defendant hereto for any right, title or interest he / she may claim or have in and to the mortgaged premises as set forth in Exhibit "A" of this complaint.

## FIRST COUNT
### (Foreclosure)

5.  That on or about April 29, 2002, Plaintiff's predecessor in interest, Hudson City Savings Bank ("Lender"), made a Loan to ("Borrower(s)") H. SCOTT GURVEY in the original principal amount of $561,600.00 (the "Loan").

6.  To evidence its indebted ness under the Loan, on or about April 29, 2002, Borrower(s) / Obligor(s) H. SCOTT GURVEY duly executed and delivered to Lender / Obligee a certain promissory Note in the original principal amount of $561,600.00, payable in monthly installments of principal and interest in the amount of $3,689.31 to be paid on the first day of each and every month beginning on June 1, 2002, and continuing to the first day of May 1, 2032, when the final payment was due and owing. The Note provided for interest at annual fixed rate of 6.875% per annum (the "Interest Rate").

2

7.  That the Borrower(s) H. SCOTT GURVEY did in fact receive such loan in the principal amount as stated in the Note, and Plaintiff's predecessor in interest did advance said sum to said Borrower(s).

8.  To secure payment of the obligation under the Note, on or about April 29, 2002, the Borrower(s) / Mortgagor(s), H. SCOTT GURVEY and AMY GURVEY executed and delivered a Mortgage and Security Instrument (the "Mortgage") in favor of Plaintiff's predecessor in interest, Hudson City Savings Bank, in the original principal amount of $561,600.00.

9.  That the Mortgage was duly recorded on May 20, 2002, at the Essex County Register's Office, Book 8263, Page 818.

10.  That the Mortgage executed and delivered by Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY **is a purchase money mortgage**.

11.  That the Mortgage encumbers all that certain real property commonly known as 315 Highland Avenue, Montclair, New Jersey 07043 and also known as Lot(s) 1, Block 705 as shown on the Tax Map of the Township of Montclair, County of Essex, and State of New Jersey, including all improvements thereon, and more particularly described in Exhibit "B" annexed hereto and made part hereof ("the Mortgaged Property"). The mortgaged property is delineated by a metes and bounds description and by municipal tax map block and lot reference in the aforementioned mortgage. The Mortgage includes the legal description as set forth on Exhibit "B."

12.  That the Mortgage has not been assigned.

13.  That M&T BANK S/B/M TO HUDSON CITY SAVINGS BANK is the assignee and mortgagee of record and, thus holds all right, title, and interest in and to the Note and to the Mortgage securing the debt therein.

3

14.     That on or about April 10, 2003, Hudson City Savings Bank and Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY entered into a Loan Modification Agreement with the following terms:

    a. The "Maturity Date" did not change and remained May 1, 2032;

    b. The "New Principal Balance" of the loan would be $555,756.43;

    c. An interest rate of 5.875% will begin to accrue on the New Principal Balance on May 1, 2003 and the first new monthly payment of principal and interest will amount to $3,329.36 beginning on June 1, 2003.

15.     That on or about December 17, 2009, Hudson City Savings Bank and Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY entered into a Loan Modification Agreement with the following terms:

    a. The "Maturity Date" did not change and remained May 1, 2032;

    b. The "New Principal Balance" of the loan would be $496,064.82;

    c. An interest rate of 5.250% will begin to accrue on the New Principal Balance on January 1, 2010 and the first new monthly payment of principal and interest will amount of $3,147.09 beginning on February 1, 2010.

16.     That the Note and Mortgage ("Loan Documents") provide that if Borrower(s) fails to pay the full amount of any monthly payment on the date it is due, such failure shall constitute an event of default.

17.     That the Loan Documents further provide that if any sum payable under the Loan Documents is not paid in full within fifteen (15) calendar days after the date on which it is due, the Borrower(s) shall pay a late charge equal to 5.000% of the delinquent payment.

4

18. That Loan Documents contained an agreement, that if any installment of principal and interest should remain unpaid, then after notice is given pursuant to the loan documents and any cure period has expired Lender / Plaintiff may demand the whole of the principal sum, together with all unpaid interest and advances made by the mortgagee, as immediately due.

19. That in accordance with the Loan Documents, Plaintiff gave notice of their election to require Borrower(s) / Mortgagor(s) to pay the full amounts due under the mortgage loan, should Borrower(s) not pay the overdue amount within the prescribed period.

20. That the Loan Documents further provide that upon occurrence of an event of default the Borrower(s) / Mortgagor(s) shall be liable for all costs incurred for collecting, securing or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs.

21. The Borrower(s) defaulted under the terms of the Loan Documents on May 1, 2017 by, among other things, failing to pay the principal, interest and other payments when due.

22. That there is now due, owing and payable to Plaintiff under the Note and Mortgage (i) $392,737.79 in principal; (ii) accrued and unpaid interest at the rate set forth in the Loan Documents; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Note and Mortgage including taxes, assessments, water rents, insurance premiums, escrow and/or other charges.

23. To date, Borrower(s) has/have not paid the amounts due under the Note and Mortgage and accordingly, Plaintiff hereby elects to call due the entire amount secured by the Mortgage and accelerates and demands payment of all sums due under the Note and Mortgage.

24. That in order to protect its security the Plaintiff has been, and/or may be compelled during the pendency of this action to pay local taxes, assessments, water rents, insurance premiums,

5

18.     That Loan Documents contained an agreement, that if any installment of principal and interest should remain unpaid, then after notice is given pursuant to the loan documents and any cure period has expired Lender / Plaintiff may demand the whole of the principal sum, together with all unpaid interest and advances made by the mortgagee, as immediately due.

19.     That in accordance with the Loan Documents, Plaintiff gave notice of their election to require Borrower(s) / Mortgagor(s) to pay the full amounts due under the mortgage loan, should Borrower(s) not pay the overdue amount within the prescribed period.

20.     That the Loan Documents further provide that upon occurrence of an event of default the Borrower(s) / Mortgagor(s) shall be liable for all costs incurred for collecting, securing or attempting to collect or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs.

21.     The Borrower(s) defaulted under the terms of the Loan Documents on May 1, 2017 by, among other things, failing to pay the principal, interest and other payments when due.

22.     That there is now due, owing and payable to Plaintiff under the Note and Mortgage . (i) $392,737.79 in principal; (ii) accrued and unpaid interest at the rate set forth in the Loan Documents; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Note and Mortgage including taxes, assessments, water rents, insurance premiums, escrow and/or other charges.

23.     To date, Borrower(s) has/have not paid the amounts due under the Note and Mortgage and accordingly, Plaintiff hereby elects to call due the entire amount secured by the Mortgage and accelerates and demands payment of all sums due under the Note and Mortgage.

24.     That in order to protect its security the Plaintiff has been, and/or may be compelled during the pendency of this action to pay local taxes, assessments, water rents, insurance premiums,

5

F.H.A. or Veterans Administration premiums or charges, and other charges affecting the mortgaged premises, and the Plaintiff requests that any sums thus paid by it for the said purposes, together with interest thereon, should be added to the sum otherwise due and be deemed secured by the said mortgage and be adjudged a valid lien on the mortgaged premises.

25.     That in accordance with the terms of the said debt instrument and mortgage in any action upon same, the Borrower(s) / Mortgagor(s) H. SCOTT GURVEY and AMY GURVEY hereof agreed to pay Plaintiff's reasonable attorneys' fees in connection with such action, which fees are deemed to be secured by the said mortgage and are a lien on the premises prior to any right, title, claim or interest in, to or upon the mortgaged premises attaching or accruing subsequent to the lien of said mortgage.

26.     That Plaintiff shall not be deemed to have waived, released or changed the election hereinbefore made by reason of the payment, after the date of the commencement of this action, of any and all of the defaults mentioned herein; and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the aforesaid Note and Mortgage occurring prior to the discontinuance of this action are fully paid.

27.     That if applicable, Plaintiff has complied with the pre-filing notice requirements of the Fair Foreclosure Act and other notices required under the mortgage documents or required by law.

28.     Plaintiff has in compliance with the Fair Foreclosure Act, N.J.S.A. § 2A:50-56, *et seq.*, mailed a notice of intention to foreclose to the debtors at least thirty-one (31) days prior to the filing of this complaint.

29.     The defendants whose names appear in Exhibit "A" hereof and the defendants made a party hereto as set forth in paragraphs 3 and 4 hereof, if any, as the Plaintiff is informed and believes,

6

have a claim to or some interest in, or lien upon said mortgaged premises or some part thereof, which claims, interest or lien, if any, accrued subsequently to the lien of the Plaintiff's aforesaid mortgage and is subordinate thereto.

30.     Plaintiff does not seek a Writ of Possession to evict any occupant protected by the New Jersey Anti-Eviction Act, N.J.S.A. § 2A:18-61.1, *et seq.*

**WHEREFORE,** Plaintiff demands judgment against the defendants:

A. That the defendants herein and all persons claiming under them or any of them subsequent to the filing of the Lis Pendens of this action in the proper County Register's Office be barred and forever foreclosed of all right, title, claim, lien and equity of redemption in and to the mortgaged property;

B. Appointing a Receiver of the rents and profits of all of the aforesaid mortgaged property;

C. Fixing the amount due to Plaintiff pursuant to the Note and Mortgage;

D. Directing the Plaintiff be paid the amount due pursuant to the Note and Mortgage, with interest, advances, other charges, attorneys' fees and costs as set forth in the respective Loan Documents;

E. That the aforesaid mortgaged property described in the mortgage be sold according to law, and that the moneys arising from the sale thereof be brought into Court, and there be paid therefrom, insofar as the moneys properly applicable thereto will pay the same, the expenses of the sale, the balance of the indebtedness due on the aforesaid debt instrument and mortgage, with interest thereon to the date of full payment thereof, and the costs and disbursements of this action and Plaintiff's reasonable attorneys' fees, and any sum or sums which have been paid, or which may hereafter be paid by Plaintiff, for insurance premiums, taxes, water rents, sewer rents, or

7

have a claim to or some interest in, or lien upon said mortgaged premises or some part thereof, which claims, interest or lien, if any, accrued subsequently to the lien of the Plaintiff's aforesaid mortgage and is subordinate thereto.

30.     Plaintiff does not seek a Writ of Possession to evict any occupant protected by the New Jersey Anti-Eviction Act, N.J.S.A. § 2A:18-61.1, *et seq*.

**WHEREFORE,** Plaintiff demands judgment against the defendants:

- A. That the defendants herein and all persons claiming under them or any of them subsequent to the filing of the Lis Pendens of this action in the proper County Register's Office be barred and forever foreclosed of all right, title, claim, lien and equity of redemption in and to the mortgaged property;

- B. Appointing a Receiver of the rents and profits of all of the aforesaid mortgaged property;

- C. Fixing the amount due to Plaintiff pursuant to the Note and Mortgage;

- D. Directing the Plaintiff be paid the amount due pursuant to the Note and Mortgage, with interest, advances, other charges, attorneys' fees and costs as set forth in the respective Loan Documents;

- E. That the aforesaid mortgaged property described in the mortgage be sold according to law, and that the moneys arising from the sale thereof be brought into Court, and there be paid therefrom, insofar as the moneys properly applicable thereto will pay the same, the expenses of the sale, the balance of the indebtedness due on the aforesaid debt instrument and mortgage, with interest thereon to the date of full payment thereof, and the costs and disbursements of this action and Plaintiff's reasonable attorneys' fees, and any sum or sums which have been paid, or which may hereafter be paid by Plaintiff, for insurance premiums, taxes, water rents, sewer rents, or

7

charges, costs or expenses of any nature and kind whatsoever arising out of or in any way con-

nected with the mortgaged premises, with interest thereon to the date of full payment thereof;

F.  Foreclosing and barring the defendants, and each of them, of all equity of redemption in and
to such of said lands and premises as shall be sold;

G.  That Plaintiff's assignee or the purchaser at the foreclosure sale recover possession of the
mortgaged premises against said defendants or anyone holding under them  and for costs
resulting therefrom;

H.  Awarding Plaintiff such other and further relief as to the Court shall deem just and equitable.

## SECOND COUNT
### (Possession of Mortgaged Premises)

31.     Plaintiff repeats and incorporates the allegations contained in Paragraphs 1 through 30
above, inclusive of the First Count, and makes the same a part hereof as if the same were set forth and
repeated at length herein.

32.     By reason of the default under the terms of the Note and Mortgage referred to in the
First Count of this complaint, the Plaintiff is entitled to possession of the premises described in
paragraph 11 above, as further described in Exhibit "B" attached hereto. However, no possession is
hereby sought against any tenant protected by the provisions of the New Jersey Anti-Eviction Statute
(N.J.S.A. § 2A:18–61.1, et seq.).

33.     That the Defendants named in Exhibit "A" hereby incorporated in this Complaint have
or may claim to have certain rights in the premises described in paragraph 11 above, and by reason
thereof have deprived the Plaintiff herein of the possession of the premises aforesaid.

8

**WHEREFORE,** Plaintiff demands judgment against the defendants:

A. Granting Plaintiff, its assignee or the purchaser of the Mortgaged Property at the

foreclosure sale, possession of the Mortgaged Property.

B. Awarding Plaintiff damages for *mesne* profits; and

C. Granting its costs of the suit including reasonable attorneys' fees.

D. For such other relief to which the Court shall deem Plaintiff entitled.

 

 

 

 

**SCHILLER, KNAPP,**
**LEFKOWITZ & HERTZEL, LLP**
A LLP Formed in the State of New York

 

DATED: 07/05/2018                    BY:    /s/ Philip Aimutis Jr., Esq.
Philip Aimutis Jr., Esq.
Attorneys for Plaintiff
30 Montgomery Street, Suite 1205
Jersey City, NJ 07302
Telephone: (518) 786-9069

9

## CERTIFICATION PURSUANT TO RULE 4:64-1(a)

I, Philip Aimutis Jr., Esq., the undersigned, am an attorney-at-law of New Jersey with the law firm of Schiller, Knapp, Lefkowitz & Hertzel, LLP, attorney for Plaintiff in the within action, and the person actually entrusted with the conduct and management of the case. I aver that prior to the filing of this mortgage foreclosure complaint, I have received and reviewed a title search of the public record for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to the within foreclosure. I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 07/05/2018

/s/ Philip Aimutis Jr., Esq.
Philip Aimutis Jr., Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that, to the best of my knowledge and belief, the matter in controversy is not the subject of any action pending in any other court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated, except that Plaintiff may also file an action in the Law Division, Essex County, for judgment under the Note. I know of no other parties other than the parties set forth in this pleading who should be joined in the above action. I recognize the continuing obligation of each party to file with the Court and serve on all parties an amended Certification if there is a change in the facts stated in the original Certification.

Dated: 07/05/2018                                    /s/ Philip Aimutis Jr., Esq.
                                                      Philip Aimutis Jr., Esq.

13

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated:  07/05/2018                                      /s/ Philip Aimutis Jr., Esq.
                                                        Philip Aimutis Jr., Esq.

## CERTIFICATION PURSUANT TO RULE 4:64-1(3)

I hereby certify that the Complaint and all documents annexed thereto comport with the requirements of Rule 1:4-8(a) to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.

Dated:  07/05/2018                                      /s/ Philip Aimutis Jr., Esq.
                                                        Philip Aimutis Jr., Esq.

14

CERTIFICATION OF DILIGENT INQUIRY
TO BE ANNEXED TO RESIDENTIAL MORTGAGE FORECLOSURE COMPLAINTS
PURSUANT TO RULE 1:5-6(c)(1)(E) AND RULE 4:64-1(a)(2) and (a)(3)

Philip Aimutis Jr., Esq., of full age, hereby certifies and says:

1. On July 2, 2018,  I communicated by electronic correspondence with the following named employee(s) of M&T Bank, who stated that he/she personally reviewed the complaint to be filed with the court and that he/she confirmed compliance with Rule 4:64-1(b) (1) through (b)(10) and (b)(12) through (b)(13).

2. The name, title and responsibilities of the plaintiff's employee(s) or plaintiff's mortgage loan servicer's employee(s) with whom I communicated are: MaryAnn Niedwiedz, Document Reviewer Specialist for M&T Bank, whose responsibilities and duties include reviewing default documents for accuracy.

3. Based on my communication with the above-named employee(s) of plaintiff or plaintiff's mortgage loan servicer, as well as my own inspection of the loan information supplied by the plaintiff or the plaintiff's mortgage loan servicer and other diligent inquiry, I execute this certification to comply with the requirements of Rules 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1(a)(2) and (a)(3).

4. I am aware that I have a continuing obligation under Rule 1:4-8 to amend this certification if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support for any factual assertions proffered by plaintiff in any court filings or documents in this case.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 7/5/18

SCHILLER, KNAPP,
LEFKOWITZ & HERTZEL, LLP
By: /s/ Philip Aimutis Jr., Esq.
      Philip Aimutis Jr., Esq.

(Page 7 of 30)

# FIXED RATE NOTE

| April  29 | , | 2002 | Montclair | New Jersey |
|---|---|---|---|---|
| | | | (City) | (State) |

315 HIGHLAND AVENUE, MONTCLAIR, NEW JERSEY 07043

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 561,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HUDSON CITY SAVINGS BANK. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6 (B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on June , 1. On 2002. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2032 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WEST 80 CENTURY ROAD, PARAMUS, NJ 07652 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

Each of my monthly payments for principal and interest will be in the amount of U.S. $ 3,689.31.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Any partial prepayment must be received on the installment due date. Any partial prepayment received on other than the installment due date will be considered as received on the next installment due date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded the permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal, interest, taxes and insurance. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

882283

HCSB Fixed Rate Note
Form #M08-114 (Rev. 11/94)

Da0083

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option, shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If a Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. TAX ESCROW

Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8 of the Security Instrument, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

## 12. FIRE INSURANCE

In the event the Borrower fails to supply fire insurance as required herein, and the Lender is unable to secure such fire insurance, then and in that event the principal sum hereof with all arrearages of interest thereon, shall at the option of the Lender, its successors or assigns, become and be immediately due and payable.

## 13. FLOOD INSURANCE

In addition to other insurance coverage called for hereunder the Borrower will supply Flood Insurance if applicable and available. If the Mortgagor fails to do so the Lender may proceed with the same rights and remedies as with other insurance.

## 14. PRIVATE MORTGAGE INSURANCE

The Lender may, at anytime during the mortgage term, and in its discretion, apply for renewal of mortgage insurance covering the Mortgage executed by the Borrower, pay the premiums due by reason thereof, and require repayment by the Borrower of such amounts as are advanced by said Lender. In the event of failure by the Borrower to repay said amounts to said Lender, such failure shall be considered a default, and all provisions of the Note and Mortgage with regard to default shall be applicable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
H. SCOTT GURVEY, Borrower

Social Security Number ___ Redacted ___

_____ (Seal)
GEORGE H. BUERMANN

_____ (Seal)
AMY GURVEY, Borrower

Social Security Number ___ Redacted ___

Da0084

[Page 1 of 6]

RECORD AND RETURN TO:
HUDSON CITY SAVINGS BANK
WEST 80 CENTURY ROAD
PARAMUS, NEW JERSEY 07652
ATTENTION: POST CLOSING DEPT.

Inst# 596230
Recorded/Filed  LS   2   Essex County Register
05/20/2002  11:45:3  Bk 8263 Pg 818 #Pgs  6      00

Carole A. Graves

## MORTGAGE

88 2283

THIS MORTGAGE ("Security Instrument") is given on ____ April 29 ____, 2002.
The mortgagor is  H. SCOTT GURVEY and AMY GURVEY, husband and wife
("Borrower"). This Security Instrument is given to HUDSON CITY SAVINGS BANK, which
is organized and existing under the laws of The State of New Jersey, and whose principal office and mailing address is West 80 Century
Road, Paramus, New Jersey 07652 ("Lender"). Borrower owes Lender the principal sum of Five Hundred Sixty-one thousand
Six Hundred Dollars ---------- Dollars (U.S. $ 561,600.00 ). This debt is evidenced by Borrower's note dated
the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due
and payable on   May 1   , 2032. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced
under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements
under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including
changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq.,
and upon such modification, shall have the benefit of the first priority provisions of that law. For this purpose, Borrower
does hereby mortgage, grant and convey to Lender the following described property located in the municipality of
Montclair, _____ in _____ Essex _____ County of New Jersey:

SEE RIDER ANNEXED

married
BEING THE SAME PREMISES conveyed to H. Scott Gurvey herein by Deed from John C. Collins and
Bonnie H. Collins, husband and wife, dated April 26, 2002 and about to be recorded
simultaneously herewith; this Mortgage being given to secure a part of the purchase price
for which said was given.

which has the address of   315 Highland Avenue, Montclair,
(Street)                                          (City)
New Jersey   07043  ("Property Address");
(Zip Code)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents,
royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replace-
ments and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as
the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and
convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations
by jurisdiction to constitute a uniform security instrument covering real property.
UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of
and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on
the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments
which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the
Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insur-
ance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of
the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds
in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow ac-
count under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"),
unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount
not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates
of expenditures of future Escrow Items or otherwise in accordance with applicable law.

HCSB Mortgage
Form SMSB-115 (Rev. 2/00)

**Da0085**

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

Commitment No. W-41483-N

## DESCRIPTION, SCHEDULE A-4

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Montclair, County of Essex and State of New Jersey being more particularly described as follows:

BEGINNING at a point where the northerly side of Ingleside Road intersects the easterly side of Highland Avenue; thence;

(1)   running along said northerly side of Ingleside Road, South 72 degrees 06 minutes East, 131.74 feet to the westerly line of lands now or formerly of Tupper; thence

(2)   running along the same, North 31 degrees 42 minutes East, 102.97 feet to line of lands now or formerly of Sturgis; thence

(3)   running along the same, North 72 degrees 43 minutes West, 112.64 feet to the said westerly side of Highland Avenue; thence

(4)   running along said easterly side of Highland Avenue, on a curve to the right which curve has a radius of 722.84 feet, distance of 44.52 feet; thence

(5)   still along said easterly side of Highland Avenue on a curve to the left which curve has a radius of 744.56 feet, a distance of 63.50 feet to the northerly side of Ingleside Road at the point or place of Beginning.

FOR INFORMATIONAL PURPOSES ONLY:   Also known as Lot 1, Block 705 on the Township of Montclair Tax Map.

Weichert Title Agency
Agents For:
NEW JERSEY TITLE INSURANCE COMPANY

Da0087

(Page 4 of 6)

# OWNER OCCUPANCY RIDER TO MORTGAGE

RIDER TO MORTGAGE DATED          April 29    , 2002

BETWEEN HUDSON CITY SAVINGS BANK and H. SCOTT GURVEY and AMY GURVEY, husband and wife,

Any provision of this mortgage to the contrary notwithstanding, the following provision shall be applicable.

If during the term of the note and mortgage, the lender/mortgagee discovers that the property is not being used either as a primary or a secondary residence by the owner/mortgagor, but rather is being used by the owner/mortgagor as either a rental or an investment property, then

     a.    if the loan is an adjustable rate mortgage, the lender/mortgagee will have the option of immediately increasing the interest rate by one (1) percentage point, increasing the "Margin" one (1) percentage point, and increasing the lifetime caps on the interest rate by one (1) percentage point; OR

     b.    if the loan is a fixed rate mortgage, the lender/mortgagee will have the option of immediately increasing the interest rate by one (1) percentage point.

_____ L.S.          _____ L.S.
H. SCOTT GURVEY                    AMY GURVEY

HCSB Owner Occupancy Mortgage Rider
Form #MO6-116 (Rev. 11/94)

Da0088

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower may at Lender's complete discretion have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. In the event that Borrower seeks to reinstate, by curing a default through a bankruptcy proceeding, the Lender shall be entitled to interest on the amount necessary to cure the default at the rate specified in the Note secured by this Security Instrument. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17. Accordingly, the right of Borrower to cure any default and reinstate the obligation subsequent to acceleration by Lender shall be at Lender's complete discretion.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There may also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise.) The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 10 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified

Da0089

(Page 6' of  6)'

The alterations made on this Mortgage and attached rider(s) were made before same were signed.

in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Borrower shall have the option to request the Lender to cancel this Security Instrument. If the Borrower requests the Lender to cancel this Security Instrument, the Lender shall have the right to charge the Borrower recordation costs and any other appropriate administrative fees in accordance with State and/or Federal Law.

**23. No Claim of Credit for Taxes.** Borrower will not make a deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es))

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☒ Owner Occupancy Rider

☐ 2-4 Family Rider            ☐ Planned Unit Development Rider    ☒ Other Description

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
George H. Buermann                           H. SCOTT GURVEY            Borrower

_____          _____ (Seal)
George H. Buermann                           AMY GURVEY                 Borrower

————————— (Space Below This Line For Acknowledgement) —————————

STATE OF NEW JERSEY _____ Essex _____ County ss:

On this 29th day of April _____ 20 02 before me, the subscriber, personally appeared
_____ SCOTT GURVEY and W. GURVEY, husband and wife,
who, I am satisfied, are the person(s) named in and who executed the within instrument, and thereupon,
acknowledged that they signed, sealed and delivered the same as their act and deed, for the purposes therein expressed.

_____
                                   Notary Public
GEORGE H. BUERMANN
An Attorney at Law of New Jersey

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.

Witness:

_____          _____ (Seal)
George H. Buermann                           H. SCOTT GURVEY            Borrower

_____          _____ (Seal)
George H. Buermann                           AMY GURVEY                 Borrower

————————— (Space Below This Line Reserved For Lender and Recorder) —————————

RECORD AND RETURN TO:
HUDSON CITY SAVINGS BANK
WEST 80 CENTURY ROAD
PARAMUS, NEW JERSEY 07652
ATTENTION: POST CLOSING DEPT.

Da0090

# EXHIBIT 5

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M&T BANK, | No.18-12702 (SDW)(CLW) |
| Plaintiff, | |
| v. | **ORDER** |
| H. SCOTT GURVEY, et al., | |
| Defendants. | March 29, 2019 |

**WIGENTON**, District Judge.

Before this Court is the Report and Recommendation ("R&R") entered on March 14, 2019

by Magistrate Judge Cathy L. Waldor ("Judge Waldor"), recommending that Plaintiff M&T

Bank's Motion to Remand be granted. Neither Plaintiff nor Defendants filed an objection to the

R&R.

This Court has reviewed the reasons set forth by Judge Waldor in the R&R and the other

documents in this matter. Based on the foregoing, and for good cause shown, it is hereby

**ORDERED** that the R&R of Judge Waldor (Dkt. No. 14) is **ADOPTED** as the conclusions

of law of this Court.

**SO ORDERED.**

                    /s/ Susan D. Wigenton
                    **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties
       Cathy L. Waldor, U.S.M.J.

*Original*
*Court Copy*

**H. SCOTT GURVEY**
**AMY GURVEY**
315 Highland Avenue
Upper Montclair, New Jersey 07043
(973) 655-0991
*Defendants pro se*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____X

M&T BANK S/B/M TO HUDSON CITY
SAVINGS BANK,
    Plaintiff,

v.

H. SCOTT GURVEY; MRS. H SCOTT
GURVEY, fictitious spouse of H. SCOTT
GURVEY; AMY GURVEY
    Defendants.

**CASE NO. 12702-2018 (SDW)(CLW)**

:   [SUPERIOR COURT OF NEW JERSEY
    ESSEX VICINAGE
:   CHANCERY DIVISION
    DOCKET NO. F-014035-18]

:

:

**GURVEY DEFENDANTS'**
**Opposition to Report and**
**Recommendation of Magistrate**
**Hon. Cathy L. Waldor re Removal**
**Based on Diversity of Citizenship**
**28 USC §1332; 28 USC 1441(b)**

_____X

**H. SCOTT GURVEY** and **AMY GURVEY, NJ resident homeowners, Plaintiffs in a 2017**

**Superior Court lawsuit still existing against Plaintiff M&T herein, and Defendants in M&T's**

**subsequent July 2018 state foreclosure proceeding (F-014-35-18],** respectfully submit their

Opposition to the Report and Recommendation ("R&R") of Hon. District of NJ Magistrate Judge

Cathy L. Waldor that is in direct violation of US Supreme Court decisions on mandatory federal

preemption that apply to federally chartered banks engaging in violation of the National Banking Act and the Federal Reserve Act. §24(7); Federal Reserve Act, §24(a), 12 U. S. C. A. 371 (a); 12 U. S. C. A. §24(a)(g)(3)(A); 12 U.S. C. A. §484 (a); 12. C. F. R.§§ 7.4000, 7.4006. *Grable and Son Metal Productions v. Darue Engineering and Manufacturing*, 545 US 308, 123 S. Ct. 2363 (2005); *Watters v. Wachovia Bank*, 127 S. Ct. 1559 (2007)(Ginsburg, J.)

## INTRODUCTION

1.    Directly contrary to Magistrate's Report and Recommendation, Gurvey defendants' removal motion is based on diversity of citizenship jurisdiction, 28 USC §1332, and not federal question.

2.    Gurveys are NJ homeowners and M&T New York Banking Corporation is a foreign federally chartered bank organized under the laws of New York. This is admitted on the face of M&T's state foreclosure proceeding filed in July 2018. The amount in controversy is also on the face of the foreclosure proceeding admitted by M&T to be $476, 355.55, over the $75,000 minimum required by the federal courts.

3.    That diversity exists is admitted by Plaintiff M&T. IN Gurvey Plaintiffs' 2017 Superior Court previous and still-pending lawsuit filed before Essex Vicinage that remains in full force and effect[1], M&T's attorney at Reed Smith, LLP, Aaron Bender, Esq., frivolously contested

---

[1] ESX-L-04337-17 pending before Hon. Patrick J. Bartels in Superior Court of NJ, Essex Vicinage.

service by falsely alleging to Superior Court that Gurvey Plaintiffs did not serve M&T at its corporate headquarters in Buffalo, New York. In fact, Gurvey Plaintiffs did serve M&T in Buffalo, New York (**Exhibit 1**). This was the first of five frivolous motion sequences by M&T to unsuccessfully attempt to get the case dismissed. Currently, a motion to strike M&T's answer for contumacious defiance of discovery is pending, but no final judgment in the case has been entered.

4.      M&T's subsequent Chancery Court foreclosure proceeding was filed 14 months later in the same court alleged in July 2018 by debt collectors, Schiller, Knapp, Lefkowitz & Hertzel, LLP ("SKLH"). On its face of the foreclosure proceeding M&T admits it is a NY Banking Corporation, a federally chartered bank and that the amount in controversy is $476,435.55. This is six times above the $75,000 jurisdictional minimum required for diversity jurisdiction.

5.      On its face, the foreclosure proceeding also constitutes a fraud upon the state court, including falsely sworn affirmations and affidavits that "no lawsuit exists between M&T and the Gurveys", in an attempt to get around NJ's Entire Controversy Rule.

6.      For purposes of Gurveys' removal motion, it is important that if removal is denied and the case remanded, only claims that are germane to foreclosure could be adjudicated. Claims that are not germane and in the federal court's exclusive jurisdiction including M&T's obstruction of justice in violation of 18 USC 1020 by filing false documents in a Federal Reserve investigation in 2018, as occurred here, could not be heard. [2] This could result in prejudice to the

---

[2] Rule 4:64-5 provides:

3

Gurveys, delay in litigation of valuable claims, and inconsistent judgments that would impede the proper administration of justice.

7.    Moreover, because plaintiff M&T is a federally chartered bank, federal jurisdiction is conferred in this court to adjudicate M&T's acts and omissions governed by the National Banking Act, the Federal Reserve Act and the Office of the Comptroller.  M&T has the duty of full compliance with preempting federal banking laws including to honestly account to and comply with promulgated federal regulations in a Federal Reserve investigation.  It was M&T's absolute duty as a federally chartered bank to file correct and truthful statements before the Federal Reserve's Investigation that was opened  in 2018 *before* M&T filed the frivolous foreclosure proceeding with falsely sworn documents.  M&T breached that duty.  The damage claims are not

---

> Unless the court otherwise orders on notice and for good cause
> shown, claims for foreclosure of mortgages shall not be joined with non-
> germane claims against the mortgagor or other persons liable on the debt.
> Only germane counterclaims and cross-claims may be pleaded in
> foreclosure actions without leave of court. Non-germane claims shall
> include, but not be limited to, claims on the instrument of obligation
> evidencing the mortgage debt, assumption agreements and guarantees.

Rule 4:64-5 bars the assertion of non-germane claims in a foreclosure action except by order of court, on notice, and for good cause shown. The entire controversy rule, Rule 4:30A, cross-references and excepts Rule 4:64-5 from its application. Thus the scope of the entire controversy doctrine is limited to "germane" claims in mortgage foreclosure actions. Whether a foreclosure claim is later barred by the entire controversy doctrine depends upon whether it is deemed "germane."

4

germane to foreclosure and can only be heard in federal court.

8.      Gurvey defendants' mortgage instrument was issued in 2002 by a NJ savings and loan corporation, Hudson City Savings Bank ("HCSB"), and its fraud in attempting to coerce Gurveys to sign modifications in favor of M&T with more comprehensive federal foreclosure remedies, are themselves also federal violations. 12 U.S.C.A. §24(7); Federal Reserve Act, §24(a), 12 U. S. C. A. 371 (a); 12 U. S. C. A. §24(a)(g)(3)(A); 12 U.S. C. A. §484 (a); 12 CFR §§ 7.4000, 7.4006.

9.      In this case, the US Supreme Court has already spoken. Federal banking statutes preempt the law of the state on Gurveys' claims that M&T obstructed of justice before the Federal Reserve Bank by submitting false documents in a federal investigation and to attempt to coerce Gurveys to sign a modification to their mortgage contract. 18 USC §1020. Therefore, the district court is empowered with exclusive jurisdiction to preempt state foreclosure law and hear these claims under its federal question jurisdiction. M&T's defiance of both the NBA and FRA overcome M&T attempted service of the Gurveys in New Jersey pursuant 28 USC 1441(b). See _Grable and Son Metal Productions v. Darue Engineering and Manufacturing_, 545 US 308, 123 S. Ct. 2363 (2005).; _Watters v. Wachovia Bank_, 127 S. Ct. 1559 (2007)(Ginsburg, J.)

10.     Debt collectors thereafter hired by M&T - Schiller, Knapp, Lefkowitz & Hertzel, LLP ("SKLH") - then filed the separate fraudulent foreclosure proceeding before the Chancery Division of the Superior Court of NJ, with fraudulent affidavits falsely alleging that no lawsuit existed between Plaintiff and Gurvey defendants. As a matter of law, SKLH is liable to Gurveys for violations of the Fair Debt Collection Practices Act, 15 USC 1692e for violations of federal

5

statutes. Gurveys hereby notice withdrawal without prejudice of their proposed counterclaims to be filed, but not yet filed, against SKLH in a separate federal lawsuit. See *Slorp v. Lerner Sampson and Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014) Gurveys notice that their appending counterclaims to their removal motion was to demonstrate to the court the illegal federal banking transgressions by both M&T and its agent debt collectors. It is important, for purposes of overcoming the 28 1441(b) that M&T's employees and its debt collectors both defrauded the state court in affidavits filed in support of the foreclosure proceeding . That essential fact is virtually omitted from Magistrate's entire Report and Recommendation.

11.     Even if Plaintiff M&T were a state bank (which it is not), SKLH's fraudulent foreclosure proceeding would be subject to immediate dismissal by the State of NJ based on the Entire Controversy Rule, but only germane claims to foreclosure could be adjudicated, causing prejudice to Gurveys' prosecution interests and the potential for inconsistent judgments.

12.     M&T's defiance of federal banking mandates under NRA and FRA and obstruction of justice are claims are also NOT PREEMPTED by less stringent state foreclosure statutes. They present a federal question that overcomes 28 USC 1441(b) an can only be analyzed in a lawsuit before this Court.

## THE REPORT AND RECOMMENDATIONS IS CONTRARY TO NOTIONS OF MANDATORY FEDERAL PREEMPTION

13.     Most respectfully, Magistrate's R&R does not mention the above federal banking mandates whatsoever. Moreover, the R&R is contrary to the National Banking Act, the Federal Reserve Act, 12 USC §§1, 24 et seq. ("NBA")("FRA") and preempting US Supreme Court decisions

6

iterated in *Grable and Son Metal Productions v. Darue Engineering and Manufacturing*, 545 US 308, 123 S. Ct. 2363 (2005) because only the federal district court can perform the required removal diversity analysis.

14. Moreover, the US Supreme Court is unanimous that under the National Banking Act, a national bank's mortgage lending mortgage business, whether conducted by the bank itself or through the bank's state operating subsidiary, is subject to superintendence of the Office of the Comptroller (OCC) and preemption of federal banking laws and not to the licensing, reporting, and visitorial regimes of the several states in which the subsidiary operates. 12 U.S.C.A. §24(7); Federal Reserve Act, §24(a), 12 U. S. C. A. 371 (a); 12 U. S. C. A. §24(a)(g)(3)(A); 12 U.S. C. A. §484 (a); 12. C. F. R.§§ 7.4000, 7.4006; See, e.g., *Watters v. Wachovia Bank*, 127 S. Ct. 1559 (2007)(Ginsburg, J.)

15. In this case, however, Plaintiff M&T allegedly accepted assignment of Gurvey defendants' 2002 mortgage issued by a New Jersey savings and loan, Hudson City Savings Bank. Gurveys had already filed a state lawsuit before the NJ Superior Court based on Plaintiff M&T breaches of the mortgage contract allegedly assigned and contumacious defiance of its limited remedies set forth in that mortgage instrument. Thereafter however, M&T attempted to coerce Gurveys to execute a new mortgage instrument in favor of M&T with more comprehensive foreclosure remedies, which Gurveys refused to do and could not be forced to do, which constitute independent and actionable violations of the National Banking Act.

16. Thereafter, M&T, having also allegedly engaged in collusion with Montclair Township's Tax Assessor to put pressure on the Gurveys, engaged in RICO violations. The Federal

7

Reserve and the Office of the Comptroller, both have administrative supervision over M&T acts and omissions against the Gurveys and M&T's defiance of governing federal banking statutes are not germane to foreclosure and can only be analyzed by the federal courts.

17. That Plaintiff M&T alleged on the face of its foreclosure proceeding that it might join Montclair Township's officers and Tax Assessors is nothing but ploy to attempt to destroy diversity that won't work. Montclair Township owes Gurveys several years of tax refunds while the Gurveys home was quarantined by order of the State of NJ between 2009-2012 for spontaneous asbestos contamination. There is no mandatory tax escrow provision under the Gurveys' mortgage agreement with HCSB. The relevant asbestos and alleged collusion documents are already the subject of discovery in Gurveys' Superior Court motion for more than 21 months. Plaintiff M&T has contumaciously defied its discovery obligations as a party in that lawsuit and a motion is pending to strike its answer. There is no need to complicate the instant removal motion with additional parties when M&T as a party must produce the requested discovery in Superior Court.

18. Instead, as part of its pattern of engaging in mail fraud and RICO violations across state lines, 18 USC 1961, M&T submitted fraudulent papers in the Federal Reserve's investigation in violation of 18 USC 1020. These acts subsequent to the filing of Gurveys' Superior Court damages lawsuit, constitute separate violations of the National Banking Act and the Federal Reserve Act not germane to foreclosure, presenting federal questions under this Court's jurisdiction.

19. That federal banking and obstruction of justice violations confer federal question

8

2017. ESX-L- 04337 -17. However, there is no guarantee that Judge Bartels will grant an amended complaint to add claims for obstruction of justice against M&T.

## ERRONEOUS ASSUMPTIONS IN MAGISTRATE'S REPORT AND RECOMMENDATIONS

22.     Contrary to the R&R, M&T is a federally chartered bank, whose business is governed by the National Banking Act and the Federal Reserve Act under the auspices of the Office of the Controller. 12 USC §§1, et seq.     *Watters v. Wachovia Bank*, 127 S. Ct. 1559 (2007)(Ginsburg, J.) M&T alleges it was assigned Gurveys' HCSB mortgage instrument with no proof in its foreclosure papers.

23.     Gurveys' proffered documents establish that the monthly obligation under Gurveys' HCSB mortgage contract is limited to defendants' single obligation to pay principal plus interest in the amount of $3,1 47.09 per month and no other sum. Default is expressly defined as the obligation to pay that monthly sum which Gurveys did religiously every month. These facts are not disputed by Plaintiff M&T.

24.     Allegedly M&T accepted assignment of Gurvey defendants' state mortgage and note and then began to immediately harass Gurveys in retaliation for their refusal to sign a further modification with M&T that would bequeath M&T with extended federal foreclosure remedies, **which is not allowed**.     The fraudulent means used by M&T including obstructing justice, submitted false written documents and lying in a Federal Reserve investigation to achieve a contract modification,  constitute violations of the NBA and the FRA under the disciplinary jurisdiction of the Office of the Comptroller, separate from breaches of contract and predatory acts intended to inflict fear, desperation, financial and emotional distress.

10

Petitioner's damages emanating from M&T's NBA and FRA violations can only be heard by this Court and not by the state chancery court.

25.    The US Supreme Court is unanimous that the Office of the Comptroller, the National Banking Act and The Federal Reserve Act govern M&T's lending business for real property loans including if M&T opened satellite offices in New Jersey to issue those loans.

26.    However, this is a more compelling fact pattern. This is a case where M&T went much further. It obstructed justice by filing fraudulent papers in a Federal Reserve investigation in violation of the NBA , the FRA and 18 USC §1020 and then falsified state foreclosure documents that could not hear the obstruction of justice claims.

27.    There is also no dispute that Plaintiff M&T began rejecting Gurveys' monthly mortgage payments and programmed its computers to reject Gurveys' monthly payments as a pretext to file a foreclosure action and get illegal access to their home.

28.    There is no dispute that Plaintiff M&T attempted to refund already credited monthly payments to the Gurveys that Gurveys would not accept.

29.    There is no dispute that Plaintiff M&T entered fraudulent notices to credit reporting agencies and failed to remove them when disputed with proof by the Gurveys that caused the Federal Reserve to open a sua sponte investigation.

30.    There is no dispute that M&T breached an implied in law contract it created by promissory estoppel by voluntarily closing the optional escrow account related to Montclair's owed tax refunds, causing Montclair to renege on paying these refunds, that to date have not been paid. There is not dispute that M&T tortiously interfered with Gurveys' refund interests, that is also not germane to foreclosure.

11

31. However, it is M&T violations of the NBA and FRA and obstruction of justice in a Federal Reserve investigation that preempt state law, and present federal questions that are at issue in this motion for removal based on diversity.

32. Gurveys' other federal statutory violations and state claims can also be heard before this Court because there is no state court judgment yet entered in the Superior Court lawsuit. 28 USC 1367.

33. In the interests of justice, all federal claims should be heard before this Court including those that accrued after the Superior Court lawsuit was filed against M&T in 2017.

## THE LAW OF REMOVAL RE DIVERSITY OF CITIZENSHIP - 28 USC 1441(b)

34. Magistrate's R&R respectfully failed to apply the preempting federal law pertaining to diversity and removal under 28 USC 1332, 28 USC 1441 (b) when a federally chartered foreign bank obstructs justice before the Federal Reserve. These facts were not mentioned.

35. Magistrate also did not mention that M&T federal violations of the FRA including obstruction of justice were undertaken after Gurveys had already sued Plaintiff M&T in the Superior Court of NJ in 2017, in a litigation that is pending and very much alive. ESX-L-04337-17. These matters are not germane to foreclosure and there is no guarantee the Superior Court will grant an amended complaint.

36. This Court, therefore, must grant the Gurveys' removal motion under prevailing removal law because federal questions of nation import emanating from M&T further violations of federal banking statutes are not disputed. The amount in controversy,

12

$476.435.55, is far above the $75,000 required for diversity jurisdiction of this Court. Gurveys' answers and counterclaims including federal obstruction justice evidence were committed subsequent to the filing of the Superior Court lawsuit, could not be adjudicated in that lawsuit, and are not germane to foreclosure. That Plaintiff M&T hired New York debt collectors to harass Gurveys through mail fraud by filing false affidavits in the foreclosure proceeding demonstrates further acts in violation of 15 USC 1692e and unlawful acts in furtherance of a pattern of racketeering. *Slorp v. Lerner, Sampson and Rothfuss*, 547 Fed. Appx. 249 (6th Cir. 2014).

37.     There is no statement by Plaintiff M&T that Gurveys did not timely move to remove the foreclosure proceeding.

38.     There is no dispute that this case presents a removal federal question under *Grable and Son Metal Productions v. Darue Engineering and Manufacturing*, 545 US 308, 123 S. Ct. 2363 (2005) that supersedes M&T attempt to serve Gurveys in New Jersey. 28 USC 1441(b).

39.     In *Grable, supra*, the Internal Revenue Service seized real property owned by petitioner (Grable) to satisfy a federal tax delinquency, and gave Grable notice by certified mail before selling the property to respondent (hereinafter Darue). Grable subsequently brought a quiet title action in state court, claiming that Darue's title was invalid because 26 USC §6335 required the IRS to give Grable notice of the sale by personal service, not certified mail. Darue removed the case to Federal District Court as presenting a federal question because the title claim depended on an interpretation of federal tax law. The District Court declined to remand the case, finding that it posed a significant federal-law question, and it granted Darue summary judgment on the merits. The Sixth Circuit affirmed, and this Court granted certiorari on the

13

jurisdictional diversity question under 28 USC §§1332, 1441(b).

## CONCLUSION

40.     Gurveys' claims against M&T for engaging in obstruction of justice before the

Federal Reserve and violating federal banking laws are new claims not filed before the Superior

Court in Gurveys' Plaintiff's 2017 proceeding because they had not accrued when Gurveys filed

that proceeding.

41.     Coupled with M&T's violations of the NBA, the FRA in matters pertaining to

Gurveys' state mortgage, conflicts of law issues are presented, mandatory preemption of

federal banking laws governs the case, and a federal question is involved that requires this

Court to grant removal of the foreclosure proceeding.


**WHEREFORE**, Gurvey defendants request that the Report and Recommendations of

Magistrate Cathy L. Waldor be vacated, that Gurveys' motion for removal be granted, and

Plaintiff M&T's motion for remand be denied.


Dated: March 27, 2019                              Respectfully submitted,

H. SCOTT GURVEY

AMY R. GURVEY

14

**H. Scott Gurvey**
**Amy Gurvey**
315 Highland Avenue
Upper Montclair, N.J. 07043
(973) 655-0991
Fax: (973) 655-0992

August 3, 2017

The Hon. Patrick J. Bartels
Essex County - Civil Division
Superior Court of New Jersey
465 Martin Luther King Jr. Blvd
Newark, NJ 07102

> Re:  Gurvey, *Pro Se*, v. M&T Bank Corporation, Inc.
> Superior Court of New Jersey, Essex County, Civil Division
> Docket No. ESX L -004337 17

Dear Hon. Judge Bartels:

I am the co-plaintiff *pro* se in the above titled case. Yesterday I received a copy of letter to Your Honor dated July 27, 2017 and written by Aaron M. Bender of the firm Reed Smith LLP. In his letter Mr. Bender identifies himself as counsel for the defendant and alleges deficiencies in Plaintiffs' filing and service of their complaint in this matter. In his letter Mr. Bender makes several misrepresentations of fact and Plaintiffs write to voice their objections and correct the record.

In his very first sentence Mr. Bender reports "This firm has been retained to represent Defendant M&T Bank (erroneously sued as 'M&T Bank Corporation, Inc.'..." Please note that the web site of Mr. Bender's client ("M&T") contains a copy of the company's most recent Form 8-K filing with the Securities and Exchange Commission. The front page of this report, dated July 19, 2017, contains the text "M&T BANK CORPORATION" over the text "(Exact name of registrant as specified in its charter)". The report also contains a copy of a news release issued by M&T also dated July 19, 2017 which opens with the sentence, "BUFFALO, NEW YORK -- M&T Bank Corporation ("M&T")(NYSE: MTB) today reported its results of operations for the quarter ended June 30, 2017."

Mr. Bender also notes, correctly, that Plaintiffs filed their Complaint and Order to Show Cause ("OTSC") on June 13, 2017. He then continues to argue that "they did not properly serve M&T Bank with these documents."

Mr. Bender seems to make two arguments on the matter of service, one based on timeliness and one based on the manner. As to the first argument, it is true that M&T Bank was served at its headquarters in Buffalo, New York on July 14, 2017. But an inspection of the OTSC itself on page 1 and again on page 5 shows that Your Honor issued and signed the order on July 14, 2017, a Friday, and noticed Plaintiffs to make service by the following Monday, July 17, 2017. Plaintiffs in fact made extraordinary efforts and incurred extra expense to arrange for a copy of the Complaint and OTSC to be hand served on M&T that very same day. It is hard to see how service could have been made any sooner.

As to the manner of service, original service to commence an action is generally made in person. In practice, individual defendants often try to avoid service. But a business does not have that luxury. In New Jersey as in most states a business must register with the state and provide the name and address of an agent who will receive instate service. The state Department of Revenue will serve papers on a company's registered agent for a small fee. But when I called the department I was told there was no way they would meet the Monday deadline for service to the agent and did not know if service to them was adequate for determining the date of service.

New Jersey lists M&T as a foreign for-profit corporation with the headquarters address in Buffalo, New York. M&T is also subject to regulation by the New Jersey Department of Banking and Insurance. That Department's web site lists only the Buffalo address. M&T's own web site also lists only the Buffalo address for legal matters. I called the headquarters, asking for the chief counsel. I was transferred to the law department which informed me that service was proper at the Buffalo address.[1] That address is what I used. In the affidavit of process, already filed with the Court, the process server avers he made service, "By delivering a true copy of each to and leaving with AMY CHERRY, BANKING OFFICER, LEGAL DOCUMENT PROCESSING who stated he/she is authorized to accept service on behalf of the corporation/government entity."

Mr. Bender has also been selective in his citation of court rules. The rules and caselaw make it clear the Court has wide discretion in this matter. R. 4:4-4(a)(6) allows for service on any employee of the corporation doing business within the state. There being no listed New Jersey headquarters I contacted the manager of the nearest branch in West Caldwell and I was informed that they would not accept service and I should contact the headquarters in Buffalo for instructions.[2] R. 4:4-4(b) provides various methods for service out of state when service within the state is not possible and the facts clearly fall within those boundaries for effective service.

---

[1] I have tried for more than a year to reach out to M&T's chief counsel or CEO to reach an amiable solution to our issues without success. I am simply referred to the law department where legal process is received.

[2] This is not surprising. On July 13th, 2017, the branch manager in West Caldwell, Terasa Saponara, illegally refused to accept Plaintiffs' payment of principal and interest for July, a breach of their contract which will be added as a claim in Plaintiffs'' First Amended Complaint.

If M&T raises the service issue in its formal papers we are ready to provide the documentary evidence of all the research we did to effect service, and we will also subpoena testimony from the various M&T employees we talked to. It would not be right for M&T to use this issue to distract the Court from the basic fact that M&T ignored the summons for nearly two weeks and then sent a representative who was not equipped to answer the motion while at the same time taking illegal actions against Plaintiffs and threatening to take other, imminent, illegal actions which would cause great harm to them.

Very truly yours,

Scott Gurvey, Plaintiff *pro se*

cc: Clerk of the Court
Aaron M. Bender, Reed Smith LLP

# EXHIBIT 6

**H. Scott Gurvey**
**Amy Gurvey**
315 Highland Avenue
Upper Montclair, N.J. 07043
(973) 655-0991
Fax: (973) 655-0992
hscott101@scottgurvey.com

SUPERIOR COURT OF N.J
   CIVIL DIVISION
ESSEX VICINAGE

2020 JAN 22 ⊃ 3: 13

CIVIL DIVISION
RECEIVED/FILED
27

January 13, 2020

Hon. Judge Thomas Moore
Presiding Judge, Essex Vicinage
Historic Courthouse
470 Martin Luther King Jr. Blvd.,2nd Floor
Newark, NJ 07102

FILED

**JAN 2 2 2020**

Re:     Gurvey, *Pro Se*, v. M&T Bank Corporation, Inc.
        Superior Court of New Jersey, Essex County, Civil Division
        Docket No. ESX L -004337 17

Dear Hon. Judge Moore:

I am the co-plaintiff *pro* se in the above titled matter and I write you in your capacity as presiding judge and at the suggestion of Debra Dadic, Civil Division Manager, with whom I have had several communications during the pendency of this case. The case has now been dismissed, for the third time, as a result of administrative errors by court staff. Respectfully, this situation has deprived my wife and myself of our right to a day in court to address the numerous torts of the defendant, M&T Bank. The frequency of these occurrences leads one to wonder if something more nefarious than simple error is involved.

Most of the documents to which I refer have been logged into the eCourts system. As you know, *pro se* litigants are denied access to that system, a fact which I believe has contributed to the problems we have faced and a clear violation of our due process rights. I have however, at the suggestion of Ms. Dadic, who kindly instructed me on the procedure, used the public/media access menu item on the New Jersey Courts web site to at least read the public docket. I will use the document numbers from that display.

A mandatory arbitration was held on June 26, 2019. An arbitration award was posted to eCourts that same day (Doc #46).

On July 22, 2019, Plaintiffs filed three motions (Docs #47, 48 and 49). One of these was titled "Plaintiffs' Motion to Strike/Reject Arbitration Report et al." This motion includes a review of the litigation history as well as the details of the mandatory arbitration session and invokes **R. 4:21A** which allows Plaintiffs to obtain a trial *de novo* as a matter of right. This motion was timely filed. On the docket, over which a *pro se* litigant has no control, the motion

The Hon. Thomas Moore, J.S.C.
ESX L -004337 17 – January 13, 2020
Page 2

was titled by court staff, "Motion to Strike Answer or Motion to Strike or Suppress Answer uploaded by Case Management Staff."

The other motions filed that day consisted of a motion to compel answers to interrogatories and a motion for leave to file a third amended complaint. Defendant M&T Bank filed opposition to these motions and Plaintiffs filed a reply.

In late August 2019, Plaintiffs became aware through their monitoring of public records that on August 22, 2019, Case Management had uploaded a court notice dated August 21, 2019, **written over your honor's signature,** dismissing the case stating, "neither party having moved for a trial de novo within 30 days of the arbitration decision." Plaintiffs have never received a paper copy of this order.[1]

Upon discovering the order through the public records system, I contacted Ms. Dadic, who promised to investigate. I was subsequently contacted by Ms. Ogechi Okubanjo, who I believe is the Arbitration Manager.

Ms. Okubanjo informed me that the dismissal order had been issued in error and that the arbitration department had not realized that the motion (Doc #47), sent by mail to the clerk's office by *pro se* litigants who could not file it themselves, was a R. 4:21A request for trial *de novo*.

Ms. Okubanjo also informed me that she had spoken to Judge Stecher's law clerk who understand the situation, that the three motions remained on the calendar and that they would be ruled on in due course. It was my understanding following this discussion that the arbitration office would vacate the erroneously filed dismissal order.

My letter to Ms. Dadic was copied to all parties and to the clerk's office for entry on eCourts. I talked with a person named "Colin" who I believe is Judge Stecher's law clerk who seemed to understand the circumstances. There is no evidence the letter was ever entered into eCourts.

More than four months later I received by regular mail orders from Judge Stecher dated January 6, 2020 (Docs #53, 54, 55). All three of our motions were denied because the case was closed on August 21st. The handwritten text on the bottom of the motion for the trial *de novo* reads:

> *Plaintiff's motion ... is denied as this matter was dismissed by the Court on August 21, 2019 for failure to confirm the arbitration decision or move for a trial de novo within allowed time periods....*

Let us just be clear about this. Our motion, timely filed, moving for a trial *de novo* was denied because more than a month after the motion was filed the Court dismissed our case in

---

[1] This is a problem I believe is systemic and the source of much of the difficulty we have faced in this case. Entries made into eCourts by case management and by the arbitration office are often not being sent in paper form to plaintiffs, who are *pro se* litigants.

error for failure to move for a trial *de novo*. This would make a great script for a Marx Brothers film if it wasn't such a travesty of justice.

As I wrote above, this is the third time this case has been dismissed in error. On January 11, 2019, Judge Bartels denied a pending motion with the notation, "Motion is denied for the reason that the case has been dismissed without prejudice for failure to appear for arbitration on 1/9/2019." (Doc #35) The notice of mandatory arbitration was included in a series of notices filed by case management on November 6, 2018. These also included a notice of a case management meeting. Plaintiffs never received a written copy of these notices.

Not only were Plaintiffs unaware the case had been dismissed and they never received a written copy of the dismissal, it appears this dismissal was never actually entered into the electronic docket. Judge Bartels[2] subsequently entertained and granted a motion to reinstate.

Judge Bartels had previously dealt with an erroneous order entered by case management May 19, 2018 dismissing the case for "lack of prosecution" specifically, failure to file a second amended complaint. But the docket clearly shows the second amended complaint was received by the clerk's office and entered into the system on April 10, 2019!

Each time this happens the case is delayed by months while we go through motion practice to vacate the erroneous orders and reinstate the case. Every move is vociferously opposed by the defendant which has so far avoided facing any ruling on the merits of the issues between us. I urge you to read the July 22 motion, opposition and reply to the motion for a trial *de novo* (Doc #47 et al) and see just how nasty and vociferous these arguments have become.[3]

The question now is what is to be done? As far as I am concerned, the August 22nd order having been entered over your signature and the arbitration office having admitted it was in error and promising it would be vacated, you should vacate the order now. As the three January 6, 2020 orders of Judge Stecher rely on the August 22nd order they too must be vacated, the case reinstated, and the three motions restored to the calendar.

If you will not act on your own, I can submit a formal motion. I'm not sure if this should be a motion to vacate, a motion to reinstate or a motion to reconsider or some combination and if I submit it to you, to Judge Stecher, or if it has to go to the Appellate Division. Beyond that I suppose I can file a new lawsuit for reasons made clear in the motion for leave to file a third amended complaint (Doc# 48). Or I can file in federal court.

Meanwhile defendant M&T Bank, whose attorney I'm sure is laughing his head off, continues each and every month to refuse to accept my mortgage payment of principal and interest and then reports to the credit agencies that I have failed to pay my mortgage. At the risk of being redundant, it might be amusing in another context.

---

[2] By this time Judge Bartels seemed to have developed an appreciation for what Plaintiffs had been going through trying to get their complaint heard in this court. Plaintiffs were therefor disappointed to discover that their case had been reassigned to another judge, without explanation and without notice.

[3] You might also consider if Paul A. Massaro is the kind of lawyer you want to employ as an arbitrator in the court you supervise.

The Hon. Thomas Moore, J.S.C.
ESX L -004337 17 – January 13, 2020
Page 4

I look forward to hearing from you.

Thank you for your consideration.

Very truly yours,

H. Scott Gurvey, Plaintiff *pro se*

cc:

Debra Dadic
Civil Division Manager
Superior Court of New Jersey
470 Martin Luther King Jr., Blvd.
Newark, New Jersey 07102

Ogechi Okubanjo
Arbitration Manager
Superior Court of New Jersey
470 Martin Luther King Jr., Blvd.
Newark, New Jersey 07102

Hon. Bridget A. Stecher, J.S.C.
Historic Courthouse
470 Martin Luther King Jr. Blvd., 1st Floor
Newark, NJ 07102

Essex County Superior Court
Clerk - Civil Division
50 West Market Street
Room 118-131
Veteran's Courthouse
Newark, NJ 07102-1607

Aaron M. Bender
Reed Smith, LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540-7839

# EXHIBIT 7

**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

H. SCOTT GURVEY and AMY GURVEY,

      Plaintiffs,

v.

M&T BANK, INC. et al.,

      Defendants.

Civil Action No: 20-7831(SDW)(LDW)

**ORDER**

December 17, 2020

**WIGENTON**, District Judge.

This matter, having come before this Court on Defendants M&T Bank, Inc. ("M&T") and Schiller, Knapp, Lefkowitz & Hertzel, LLP's ("Schiller") (collectively, "Defendants") Motions to Dismiss Plaintiffs H. Scott and Amy Gurvey's ("the Gurveys" or "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), and this Court having considered the parties' submissions, for the reasons stated in this Court's Letter Opinion dated December 17, 2020,

**IT IS** on this 17th day of December, 2020

**ORDERED** that Defendants' Motions are **GRANTED**, and that this matter is closed.

           /s/ Susan D. Wigenton
      **SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
        Leda D. Wettre, U.S.M.J.
        Parties

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

December 17, 2020

H. Scott Gurvey
Amy Gurvey
315 Highland Avenue
Montclair, NJ 07043
*Pro Se Plaintiffs*

James P. Berg, Esq.
Daniel A. Schleifstein, Esq.
Parker Ibrahim & Berg LLP
270 Davidson Avenue
Somerset, NJ 08873
*Counsel for Defendant M&T Bank, Inc.*

Richard A. Gerbino, Esq.
Schiller, Knapp, Lefkowitz & Hertzel, LLP
555 U.S. Highway 1 South, Suite 420
Iselin, NJ 08830
*Counsel for Defendant Schiller, Knapp, Lefkowitz & Hertzel, LLP*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:     Gurvey v. M&T Bank, Inc., et al.**
**Civil Action No. 20-7831 (SDW) (LDW)**

Litigants:

Before this Court are Defendants M&T Bank, Inc. ("M&T") and Schiller, Knapp, Lefkowitz & Hertzel, LLP's ("Schiller") (collectively, "Defendants") Motions to Dismiss Plaintiffs H. Scott and Amy Gurvey's ("the Gurveys" or "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).[1] This Court having considered the parties' submissions, having reached its decision without oral argument pursuant to Rule 78, and for the reasons discussed below, grants Defendants' motions.

---

[1] Schiller also moves to dismiss under Rule 12(b)(6). (*See* D.E. 7)

## DISCUSSION

A.

This Court writes only for the parties and assumes their familiarity with the procedural and factual history of this matter. In 2002, the Gurveys purchased a residential property located at 315 Highland Avenue, Montclair, New Jersey (the "Property") which they financed with a mortgage from Hudson City Savings Bank ("HCSB"). (D.E. 1 ¶¶ 31, 43.) In 2015, M&T became the successor in interest to the mortgage. (Id. ¶¶ 44-45.) Two years later, M&T sent the Gurveys notice of intent to foreclose on the Property. (Id. ¶ 78.) In response, the Gurveys filed suit against M&T in the Superior Court of New Jersey, Essex County, Law Division (Dkt. No. ESX-L-4337-17) ("State Action") on June 13, 2017, challenging M&T's basis for foreclosing. (D.E. 11-2 Ex. 13.)[2] The Third Amended Complaint in the State Action, filed on August 30, 2020, asserts seventeen state and federal law claims[3] against M&T and accuses Schiller of filing "unlawful" and "fraudulent" documents on M&T's behalf. (Id. Ex. 14.)

On July 5, 2018, M&T filed a formal foreclosure action against the Gurveys in the Superior Court of New Jersey, Essex County, Chancery Division (Dkt. No. SWC-F-014035-18) ("Foreclosure Action"). (D.E. 11-2 Ex. 4, 5.) The Gurveys' seventeen Counterclaims in the Foreclosure Action are identical to the claims contained in the Third Amended Complaint in the State Action. (Id. Ex. 7.)[4] That matter is also pending. (D.E. 18-1 Ex. B.)

On June 25, 2020 Plaintiffs filed suit in this Court, bringing eighteen state and federal law claims against Defendants, seventeen of which are identical to those filed in the state court cases. (See generally D.E. 1.) The only difference is the addition of a single count for violation of New Jersey's Fair Foreclosure Act. (Id. at 67.) Defendants subsequently moved to dismiss and all briefs were timely filed. (See D.E. 7, 11, 12, 13, 18, 19.)[5]

---

[2] Although generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss, the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion" to one for summary judgment. In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider documents "integral to or explicitly relied upon in the complaint," In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted, emphasis in original); see also In re Lipitor Antitrust Litig., 868 F.3d 231, 249 (3d Cir. 2017), or matters of public record, Chugh v. W. Inventory Servs., Inc., 333 F. Supp. 285, 289 (D.N.J. 2004). Because judicial proceedings are matters of public record, this Court will consider the existence of and filings made in the relevant state court actions.

[3] Those claims are: 1) Fair Debt Collection Practices Act; 2) Fair Credit Reporting Act; 3) intentional interference with prospective contractual advantage; 4) Real Estate Settlement Procedures Act of 1974; 5) Truth in Lending Act; 6) fraudulent misrepresentation; 7) fraudulent omission; 8) breach of contract/promissory estoppel; 9) breach of the covenant of good faith and fair dealing; 10) improper disbursement of loan payments; 11) conversion of loan payments; 12) New Jersey Consumer Fraud Act; 13) defamation; 14) assault and trespass; 15) violation of New Jersey Court Rules; 16) Racketeer Influenced and Corrupt Organizations Act; and 17) false statements in a federal investigation. (D.E. 11-2 Ex. 14.)

[4] The Gurveys unsuccessfully attempted to remove the Foreclosure Action to this Court, and it was remanded on March 29, 2019. (See Civ. No. 18-12702, D.E. 1, 14, 15, 16, 19.) The Gurveys' Counterclaims were filed before the matter was remanded. (Id. D.E. 5.) Their appeal to the Third Circuit was dismissed. (See Civ. No. 18-12702 D.E. 22, 26; see also D.E.18-1 Ex. D (indicating that the Third Circuit dismissed the appeal on July 25, 2019 and denied the Gurveys' petition for en banc and panel rehearing on August 21, 2020).)

[5] As set forth in this Court's October 16, 2020 text order, Plaintiffs' cross-motion for judgment on the pleadings will not be considered because it was not timely filed. (D.E. 16.)

B.

Although a federal court has a "virtually unflagging obligation" to exercise its jurisdiction, a federal court may abstain in the event of "exceptional" circumstances when parallel state proceedings could result in "comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) ("*Colorado River*"). Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and may be used "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest," and not "merely because a State court could entertain it." *Id.* at 813–14 (internal citations omitted).

In determining whether the *Colorado River* abstention is appropriate, this Court must first determine whether the actions are parallel. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir.1997). Cases are parallel if they involve the same parties and "substantially identical" claims, raising "nearly identical allegations and issues." *Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003) (quoting *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223 (3d Cir.1994)). It is clear that the state court actions are parallel to the current federal suit because they raise identical legal claims, are based on the same facts, and involve the same parties. Therefore, this Court must determine whether abstention is proper by weighing the six factors set forth in *Colorado River* and its progeny. *Timoney*, 66 F. App's at 405; *see also Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir.1999). Those factors are: (1) which court first assumed jurisdiction over property involved, if any; (2) the relative convenience of the fora; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law applies and (6) whether the state court will adequately protect the federal plaintiff's interests. *Spring City Corp.*, 193 F.3d at 171. "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. The factors must be balanced in "a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15 (1983).

Here, all six factors weigh in favor of abstention. The state court cases were filed in 2017 and 2018, over two years before the instant matter and involve the Property subject to foreclosure. As a result, the state court obtained jurisdiction years before this action was initiated. Given that two matters are currently pending in state court, it is inconvenient for all parties to simultaneously litigate a third case in this Court. In addition, dismissing the federal suit will avoid the potential of piecemeal litigation. Although both state and federal law are implicated in the parties' claims, the state court is an adequate forum to resolve all claims. Finally, given the state court's familiarity with foreclosure actions and its long history with the parties, it is well-situated to protect the Gurveys' rights. The Gurveys have advanced their own interests and actively engaged in litigating these issues for the past three years. There is no indication that this Court is better suited to provide Plaintiff with the relief they seek. As a result, abstention is appropriate, and Defendants' motions to dismiss will be granted.

## CONCLUSION

Defendants' Motions to Dismiss are **GRANTED**. An appropriate order follows.

                ___/s/ Susan D. Wigenton_____
                **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
      Leda D. Wettre, U.S.M.J.

# EXHIBIT 8

**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

H. SCOTT GURVEY and AMY R.
GURVEY,

       Plaintiffs,

v.

HONORABLE GLENN A. GRANT, et al.

       Defendants.

Civil Action No. 21-16397(SDW)(JSA)

**WHEREAS OPINION**

September 8, 2021

**THIS MATTER** having come before this Court[1] upon the filing of Plaintiffs H. Scott Gurvey and Amy R. Gurvey's (collectively, "Plaintiffs") Complaint and Motion for Order to Show Cause, and this Court having considered Plaintiffs' submissions, and having reached its decision without oral argument pursuant to Federal Rule of Civil Procedure 78; and

**WHEREAS** Plaintiffs are parties to two separate lawsuits in the New Jersey state court, both of which involve the foreclosure on Plaintiffs' home in Montclair, New Jersey by Defendant M&T Bank ("M&T"). The first suit was initiated by Plaintiffs against M&T in the Superior Court of New Jersey, Essex County, Law Division (Dkt. No. ESX-L-4337-17) ("State Action"), to challenge M&T's basis for foreclosing. That action is currently scheduled to go to trial on October

---

[1] As an initial matter, this Court notes that Plaintiffs filed a letter requesting that a different judge be assigned to this case. *(See* D.E. 3.) Plaintiffs do not allege that I am biased or conflicted from hearing this matter, rather, the sole basis for their request appears to be that I entered an order adopting a Report and Recommendation from Magistrate Judge Cathy L. Waldor in Civil Action No 18-12701 without considering their opposition brief. *(Id.)* It is true that, because of a delay in docketing Plaintiffs' brief, I issued my initial order without considering Plaintiffs' opposition. However, as Plaintiffs are aware, after their brief was docketed, I reviewed their arguments and issued a revised order. *(See* D.E. 19.) This being the only basis for Plaintiffs' request, I see no grounds to recuse myself from this case.

25, 2021.[2] The second suit is M&T's formal foreclosure action against Plaintiffs in the Superior Court of New Jersey, Essex County, Chancery Division (Dkt. No. SWC-F-014035-18) ("Foreclosure Action");[3] and

**WHEREAS** Plaintiffs now bring suit in this Court seeking injunctive relief as to those two matters. Specifically, Plaintiffs argue that the electronic filing system in place in the New Jersey Superior Court ("eCourts") violates their federal and state constitutional, statutory, and common law rights because it prevents them, as *pro se* litigants, from immediately filing documents electronically, which they contend hinders their ability to effectively prosecute their claims and/or defend their interests. (*See generally* D.E. 1.) As a result, Plaintiffs ask this Court "to grant Plaintiffs immediate access to eCourts," to vacate the Foreclosure Action, and to declare the eCourts system unconstitutional. (*See* D.E. 1 *generally* and ¶ 25); and

**WHEREAS** a party seeking a preliminary injunction pursuant to Rule 65 must show: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)) (internal quotation marks omitted); *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017); *Ferring Pharm., Inc.*

---

[2] Plaintiffs subsequently filed suit in this Court alleging the same essential facts and raising the same legal claims as the State Action. (*See Gurvey v. M&T Bank*, Civ. No. 20-7831.) This Court dismissed that action on abstention grounds on December 17, 2020 and denied Plaintiffs' motion for reconsideration on February 4, 2021. (*See* Civ. No. 20-7831 D.E. 20, 21, 27, 28.) That matter is closed, but Plaintiffs have moved to vacate the judgment and to amend their complaint.

[3] Plaintiffs unsuccessfully attempted to remove the Foreclosure Action to this Court, and it was remanded on March 29, 2019. (*See* Civ. No. 18-12702, D.E. 1, 14, 15, 16, 19.) Their appeal to the Third Circuit was dismissed. (*See* Civ. No. 18-12702 D.E. 22, 26; *see also* D.E.18-1 Ex. D (indicating that the Third Circuit dismissed the appeal on July 25, 2019 and denied Plaintiffs' petition for en banc and panel rehearing on August 21, 2020).) Default was entered against Plaintiffs in that matter and their attempt to vacate the default and have the case dismissed was unsuccessful.

*v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). The Third Circuit "has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits elements of the standard" instructing that it will not "'sustain a preliminary injunction ordered by the district court where either or both of [those] prerequisites are absent.'" *Scholastic Funding Grp., LLC v. Kimble*, Civ. No. 07-557, 2007 WL 1231795, at *10 (D.N.J. Apr. 24, 2007) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990)); *see also The Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*, Civ. No. 19-8828, 2019 WL 1519026, at *3 (D.N.J. Apr. 8, 2019). "Delay in filing the OTSC undermines any arguments of immediate irreparable harm." *Doris Behr*, 2019 WL 1519026 at *4; and

**WHEREAS** Plaintiffs have not shown irreparable harm because they are not precluded from filing documents in either state court case, rather, they are merely prevented from accessing the eCourts system in the same way registered attorneys do. Although Plaintiffs' filings are not immediately accessible to the state court or opposing counsel, those documents do become available, and nothing precludes Plaintiffs from showing that they timely filed documents for the court's consideration. In addition, Plaintiffs filed the State Action in 2017 and have been subject to the limits of the eCourts system since that time yet waited four years after they initiated suit to seek injunctive relief.[4] Because the element of irreparable harm requires a showing of imminent injury that must be remedied by expedited relief, Plaintiffs' delay is a sufficient and independent reason to reject their application for an injunction. *See, e.g.*, *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, Civ. No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006)

---

[4] Plaintiffs also failed to avail themselves of the state court appellate process. Any alleged failure on the state court's part to properly consider materials submitted by Plaintiff should be raised on appeal in the appropriate state tribunal.

3

(recognizing that "[w]here a Plaintiff delays in seeking preliminary injunctive relief, such delay is

evidence that speedy relief is not needed");

     **WHEREAS** for the reasons set forth above, this Court will deny Plaintiffs' motion;

     **IT IS, on this 8th day of September, 2021,**

     **ORDERED** that Plaintiffs' Motion for Order to Show Cause is **DENIED**.

     **SO ORDERED.**

                               /s/ Susan D. Wigenton
                               **United States District Judge**

Orig: Clerk
cc:   Jessica S. Allen, U.S.M.J.
      Freda L. Wolfson, Chief Judge
      Parties

4

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

September 14, 2021

H. Scott Gurvey
Amy Gurvey
315 Highland Avenue
Montclair, NJ 07043
*Pro Se Plaintiffs*

James P. Berg, Esq.
Daniel A. Schleifstein, Esq.
Parker Ibrahim & Berg LLP
270 Davidson Avenue
Somerset, NJ 08873
*Counsel for Defendant M&T Bank, Inc.*

Richard A. Gerbino, Esq.
Schiller, Knapp, Lefkowitz & Hertzel, LLP
716 Newman Springs Road, Suite 372
Lincroft, NJ 07738
*Counsel for Defendant Schiller, Knapp, Lefkowitz & Hertzel, LLP*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:    Gurvey v. M&T Bank, Inc., et al.**
**Civil Action No. 20-7831 (SDW) (LDW)**

Litigants:

Before this Court is Plaintiffs' Motion to Vacate Judgment and to Amend Complaint[1] pursuant to Federal Rules of Civil Procedure 60(b) and 15. This Court having considered the parties' submissions, having reached its decision without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, **DENIES** the Motion.

---

[1] Although Plaintiffs style their motion to amend as a motion to join defendants pursuant to Rule 20, they are, in fact, seeking to amend their complaint by adding additional defendants and asserting additional claims. (*See* D.E. 36 Ex. 1.) Such a motion is properly brought pursuant to Rule 15 and will be evaluated as such.

## DISCUSSION

Motions to vacate are permitted pursuant to Federal Rule of Civil Procedure 60(b) which allows a party to seek relief from the entry of an order for reasons of, in relevant part, "(3) fraud . . . misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(3) and (6). "The remedy provided by Rule 60(b) is extraordinary, and special circumstances must justify granting relief under it." *Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987); *see also Jones v. Citigroup, Inc.*, Civ. No. 14-6547, 2015 WL 3385938, at *3 (D.N.J. May 26, 2015). The rule exists to "strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done," *Broughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978), but "may not be used to relitigate old issues, advance new theories or secure a rehearing on the merits." *Hilton v. Whitman*, Civ. No. 09-6420, 2008 WL 5272190, at *3 (D.N.J. Dec. 16, 2008).

On December 17, 2020, this Court dismissed Plaintiffs' Complaint, finding that it lacks subject matter jurisdiction over Plaintiffs' claims under the *Colorado River* abstention doctrine. (D.E. 20, 21.) Plaintiffs moved for reconsideration and this Court denied that motion on February 4, 2021. (D.E. 27, 28.) Plaintiffs failed to timely appeal those decisions and moved for an extension of time to appeal on June 14, 2021. (D.E. 30.) On June 29, 2021, this Court denied Plaintiffs' motion as untimely. (D.E. 34, 35.)[2] Plaintiffs now move to vacate this Court's decision and to amend their Complaint. (D.E. 36.)

Plaintiffs have provided no basis for this Court to vacate its prior decision. Rather, their motion merely serves to rehash and reassert arguments it has made repeatedly before this Court. Plaintiffs fail to credibly argue either that this Court's decision was a result of fraud or misconduct or that special circumstances warrant upending this Court's finding that it must abstain from hearing Plaintiffs' claims due to the pending actions in the New Jersey Superior Court. Rather, the sole purpose of Plaintiffs' motion appears to be an attempt to circumvent the appropriate appellate processes available to them. Therefore, Plaintiffs' motion to vacate will be denied.[3]

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Vacate Judgment and Amend Complaint is **DENIED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

---

[2] Prior to receiving this Court's ruling, Plaintiffs filed an appeal with the Third Circuit which remains pending. (*See* D.E. 24-1 Ex. 20, 21, 23, 30, 31.)

[3] As a result, Plaintiffs' motion to amend must also be denied. *See, e.g., Ahmed v. Dragovich*, 297 F.3d 201, 207 (3d Cir. 2002) ("once a judgment is entered the filing of an amendment [under Rule 15] cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60") (internal citation omitted); *Atkinson v. Middlesex Cty.*, Civ. No. 09-4863, 2014 WL 2767771, at *4 (D.N.J. Jun. 18, 2014) (denying Rule 60(b) motion to vacate and motion to amend under Rule 15, recognizing that once a case is dismissed, "Plaintiff could not use Rule 15 to amend the complaint").

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.

# EXHIBIT 9

| | |
|---|---|
| **From:** | Suzanne Tobin on behalf of AppellateInformation Mailbox |
| **To:** | hscott101@scottgurvey.com |
| **Subject:** | RE: [External]FW: eCourts Appellate-Communication = AM-000023-21 = M&T NY BANK CORPORATION V. H. SCOTT GURVEY AND AMY R. GURVEY |
| **Date:** | Monday, September 27, 2021 1:24:27 PM |

Only attorney licensed to practice in NJ are able to view it.

Suzanne M. Tobin
Supervisor Paralegal Review/Intake Units
Appellate Court Clerk's Office
(609) 815-2950, Ext. 52612

**From:** hscott101@scottgurvey.com <hscott101@scottgurvey.com>
**Sent:** Monday, September 27, 2021 12:24 PM
**To:** AppellateInformation Mailbox <appinfo.mbx@njcourts.gov>
**Cc:** amyg@live-fi.com
**Subject:** [External]FW: eCourts Appellate-Communication = AM-000023-21 = M&T NY BANK
CORPORATION V. H. SCOTT GURVEY AND AMY R. GURVEY
**Importance:** High

**CAUTION:** This email originated from outside the Judiciary organization. Do not click links or
open attachments unless you recognize the sender and know the content is safe.
Can you confirm that our brief, appendix and payment has been received and processed?

It there any way we can see this eCourts Appellate docket?

Thank you.

Harold Scott Gurvey
201-787-5968

**From:** hscott101@scottgurvey.com <hscott101@scottgurvey.com>
**Sent:** Thursday, September 16, 2021 3:20 PM
**To:** 'amyg@live-fi.com' <amyg@live-fi.com>
**Subject:** FW: eCourts Appellate-Communication = AM-000023-21 = M&T NY BANK CORPORATION V. H.
SCOTT GURVEY AND AMY R. GURVEY
**Importance:** High

**From:** njedatanotices.mailbox@judiciary.state.nj.us <njedatanotices.mailbox@judiciary.state.nj.us>
**Sent:** Thursday, September 16, 2021 9:08 AM
**To:** Undisclosed recipients:
**Subject:** eCourts Appellate-Communication = AM-000023-21 = M&T NY BANK CORPORATION V. H.
SCOTT GURVEY AND AMY R. GURVEY
**Importance:** High

An eCourts Appellate Communication was entered by court on the case below:

Case Title: M&T NY BANK CORPORATION V. H. SCOTT GURVEY AND AMY R. GURVEY
Docket #s: (Appeal &/or Trial Court) AM-000023-21
Filing Party: H. SCOTT AND AMY R. GURVEY
Case manager:
Phone number:

**Comments:**

An electronic version of this case is now available. NJ licensed attorneys are required to submit documents electronically via eCourts Appellate. Self-represented litigants can either email their documents to appinfo.mbx@njcourts.gov or continue to submit their documents in paper form.

**NOTICE HAS BEEN ELECTRONICALLY MAILED TO:**

| APPELLANT ATTORNEY NAME | APPELLANT ATTORNEY EMAIL |
| --- | --- |
| H. SCOTT AND AMY R. GURVEY (Pro Se) | (HSCOTT101@SCOTTGURVEY.COM) |

| RESPONDENT ATTORNEY NAME | RESPONDENT ATTORNEY EMAIL |
| --- | --- |
| RICHARD A GERBINO | RGERBINO@SCHILLERKNAPP.COM.SCHILLERACMS@SCHILLERKNAPP.COM.SALLEN@SCHILLERKNAPP.COM |

Login to eCourts Appellate to view the case and documents. You will need a valid User ID (NJ Attorney Bar ID) and associated password to login.

Please do not reply to this message, this email is an automated notification, which is unable to receive replies. We are happy to help you with any questions or concerns you may have. Please contact the case manager listed above.

## NOTICE TO THE BAR

### eCOURTS CIVIL - MANDATORY ELECTRONIC FILING
### IN THE SUPERIOR COURT, ESSEX VICINAGE, LAW DIVISION, CIVIL PART

This notice relates to the filing requirements for matters in the Superior Court, Essex Vicinage, Law Division, Civil Part. Pursuant to the New Jersey Supreme Court Order dated May 30, 2017, the mandatory electronic filing date for Essex Vicinage shall be **Monday, December 11, 2017.** Accordingly, as of that December 11, 2017 date, all licensed New Jersey attorneys and law firms filing Civil pleadings and other documents, including applicable statewide judgments liens, in the Essex Vicinage must do so electronically using eCourts Civil. The only exceptions to the mandatory Civil electronic filing requirement for attorneys are confidential documents, documents excluded from public access, documents to be filed under seal, and enforcement motions filed under a docketed judgment lien ("J" docket), all of which will continue to be filed on paper.

Additionally, pursuant to the New Jersey Supreme Court Order dated July 5, 2017, as of Monday, December 11, 2017, any document submitted for filing in paper form in Essex Vicinage by an attorney in a Civil matter (Law Division, Civil Part) shall be rejected for filing, with the direction to the attorney to file the matter electronically. In such instances, the date the document is received electronically through eCourts will be the filed date.

Honorable Sallyanne Floria
Assignment Judge
Essex Vicinage

Dated: November 1, 2017

# EXHIBIT 10

                          SUPERIOR COURT OF NEW JERSEY
                          CHANCERY DIV: GENERAL EQ. PART
                          ESSEX COUNTY
                          DOCKET NO.: F-014035-18
                          A.D. #: A-000749-21-T4

M&T NY BANK CORPORATION,  )
                          )
        Plaintiff,        )
                          )         TRANSCRIPT
        vs.               )            OF
                          )          MOTION
H. SCOTT GURVEY and       )
AMY R. GURVEY,            )
                          )
        Defendants.       )

                     Place: Essex County
                            Wilentz Justice Complex
                            (Heard via Zoom)


                     Date: February 18, 2022

BEFORE:

        HONORABLE JODI LEE ALPER, J.S.C.

TRANSCRIPT ORDERED BY:

        H. SCOTT GURVEY
        Defendant

APPEARANCES:

        AARON M. BENDER, ESQ.
        (Reed Smith, LLP)
        Attorney for Plaintiff

        H. SCOTT GURVEY, PRO SE
        AMY GURVEY, PRO SE
        Defendants


                        Transcriber:  Dara Bartosiewicz
                        PHOENIX TRANSCRIPTION
                        796 Macopin Road
                        West Milford, NJ 07480
                        (862) 248-0670

                        Audio Recorded
                        Recording Opr: Angela Hart

# I N D E X

                                                      PAGE

Colloquy re: Housekeeping                         3,11,25

ARGUMENTS:

BY: Ms. Gurvey                                     4,18,22
                                                  25,29,35

BY: Mr. Bender                                    16,31,35

BY: Mr. Gurvey                                    19,23,29
                                                  33

THE COURT:

Decision                                              37

3

| | |
|---|---|
| 1 | (Proceeding commenced at 2:34:23 p.m.) |
| 2 | THE COURT: Good afternoon, we're on the |
| 3 | record in the matter of M&T Bank versus Gurvey. This |
| 4 | matter is filed under docket number F-140 -- 14035-18. |
| 5 | Today is February 18th, 2022. It's 2:34 in the |
| 6 | afternoon. We're appearing remotely as a result of the |
| 7 | COVID-19 pandemic. Our court clerk today is Ms. Angela |
| 8 | Hart, H-A-R-T. And I'm Judge Jodie Lee Alper, sitting |
| 9 | in the Essex County Chancery Division. |
| 10 | I have before me a motion to vacate final |
| 11 | judgement, and it was filed by the Gurveys. I will |
| 12 | first have Counsel place your appearance on the record. |
| 13 | And then I will swear in the Gurveys. Counsel, you |
| 14 | appearance please. |
| 15 | MR. BENDER: Good afternoon, Your Honor. |
| 16 | Aaron Bender from Reed Smith, on behalf of Plaintiff. |
| 17 | THE COURT: Thank you, good afternoon, Mr. |
| 18 | Bender. Is Ms. Amy Gurvey on? |
| 19 | MS. GURVEY: Yes, I am, Your Honor. |
| 20 | THE COURT: Thank you. |
| 21 | MS. GURVEY: I'm here. |
| 22 | THE COURT: Ms. Gurvey, would you please |
| 23 | raise your right hand? |
| 24 | A M Y  G U R V E Y, DEFENDANT, SWORN. |
| 25 | MS. GURVEY: Yes, Your Honor. |

FILED, Clerk of the Appellate Division, March 02, 2022, A-000049-21 Case 2:21-cv-16397-MCA-JSA Document 26 Filed 04/18/22 Page 117 of 158 PageID: 1089

4

```
 1              THE COURT:  Thank you.  And Mr. Scott Gurvey,
 2    are you connected?
 3              MR. GURVEY:  I am, Your Honor.
 4              THE COURT:  Thank you.  Would you please
 5    raise your right hand?
 6    S C O T T  G U R V E Y, DEFENDANT, SWORN.
 7              MR. GURVEY:  Yes, Your Honor.
 8              THE COURT:  Thank you, Mr. Gurvey.  Ms.
 9    Gurvey, this is your motion presumably on behalf of you
10    and Mr. Scott Gurvey.  And you may argue as you see
11    fit, underscoring what's in your papers.
12              MS. GURVEY:  Thank you, Your Honor.
13              THE COURT:  You're welcome.
14              MS. GURVEY:  The Gurveys filed the relevant
15    motion in -- on June 17th, 2017, in this Court in the
16    Law Division.  The Supreme Court -- excuse me.  The New
17    Jersey's constitution holds that the Law Division and
18    the Chancery are part of the same Court.  New Jersey's
19    constitution gives the Law Division power to adjudicate
20    equitable relief and in re relief in a foreclosure
21    proceeding.
22              The Gurvey's filed their for -- their claim
23    that the M&T Bank engaged in breach of two contracts in
24    June of 2017.  And there were defenses to foreclosure
25    that M&T had no right to foreclose under the terms of
```

FILED, Clerk of the Appellate Division, March 02, 2022, A-000769-21 Case 2:21-cv-16397-MCA-JSA Document 26-2 Filed 04/18/22 Page 118 of 158 PageID: 1090

5

1    the Hudson City Bank Corp. mortgage contract that M&T

2    alleged to have a dispute over taxes and never proved

3    that the Gurveys owed any. The Gurveys had a $50,000

4    tax surplus overage on account on their home. The home

5    had collapsed from a leak and asbestos con --

6    contamination. On May -- on May 5th of 2009, the

7    Gurveys were in forced evacuation, continued to pay

8    taxes, and they were owed -- the home could not be

9    lived in, rented, or sold for three years. They could

10   -- the Gurveys continued to pay taxes and their

11   mortgage payments.

12          In 2016, M&T Bank stopped taking the Gurveys

13   principal and interest payments. The contract says

14   that a default is only the failure to pay principal and

15   interest. No acceleration of the loan is a remedy or

16   the ability to foreclose for a dispute over taxes.

17   This was already found by Judge Stecher in the Law

18   Division in her own audit that this is M&T's gripe.

19          When the Gurveys entered the Law Division in

20   2017, these were claims germane to foreclosure that the

21   M&T Bank had no right to foreclose. They didn't prove

22   they had standing. Under -- under the Hudson City Bank

23   Corp. to accelerate the loan or foreclose. They had no

24   right to reject the Gurvey's principal and interest

25   payments. Therefore, once the Gurveys stated claims

6

1       germane to foreclosure, the case had to stay in the Law

2       Division.

3               Discovery was served on M&T Bank. They

4       produced no evidence that they were a holder in due

5       course of the Hudson City Bank Corp. Mortgage. They

6       produced no evidence that the Gurveys owed any taxes.

7       They were -- M&T was in fact invited to join the tax

8       court litigation and declined it breaching the entire

9       controversy doctrine on another ground.

10              The Judge told M&T that the Gurveys didn't

11      owe any taxes. Therefore, M&T had no right to stop

12      taking the payments. What M&T then did, Mr. Bender

13      told Judge. Bartels and the Gurveys that no foreclosure

14      had been filed and would not be filed. Particularly if

15      the Gurveys agreed not to file an extended federal

16      lawsuit with federal statutory claims in -- in the

17      Federal Court. The Gurveys relied on this

18      representation to their detriment.

19              Thirteen months later, M&T did everything it

20      said it wouldn't do. Using eCourts, it filed

21      electronically a fraudulent foreclosure action in this

22      Court, in the Chancery Division, with full

23      certifications that there was no existing lawsuit

24      pending between M&T and the Gurveys. Totally false.

25      Under New Jersey's entire controversy doctrine, that

FILED, Clerk of the Appellate Division, March 02, 2022, A-006749-21 Case 2:21-cv-16397-MCA-JSA Document 26 Filed 04/18/22 Page 120 of 158 PageID: 1092

7

1     statement has to be made in order to open a separate

2     lawsuit for foreclosure. So it was intentionally done

3     to mislead the Court and the Gurveys.

4          The elec -- the eCourts system does not have

5     people in the Chancery Court, any physical people,

6     checking these documents for compliance with the law.

7     It automatically docketed this frivolous foreclosure

8     action, illegally. Under the cases that have come

9     down, this action is abusive process and private

10    entity, wrongful state action under the case Zebrowski

11    versus Wells Fargo Bank, 657 F sub second, 511 from the

12    District of New Jersey, from 2011.

13         We have these damage claims against M&T Bank,

14    plus as soon as they file the foreclosure action we

15    lost a certified cast buyer for the home. The buyer

16    didn't want to get involved in this thing. They didn't

17    want to get in this tax mess. So at that particular

18    time we moved the case to the Federal Court and M&T did

19    not disclose to us that the Judge assigned to the case

20    owned stock in M&T Bank. This is fraudulent

21    nondisclosure. The case should have been removed in

22    the Federal Court at that time under Korea Exchange

23    Bank, New York Branch versus cra -- ta -- Trackwise

24    Sales Corporations, 66 F third, 46, from the District

25    of two -- New -- from the third circuit. Excuse me.

1     From 2015.

2            There were two separate defects in removal

3     procedure. Both by M&T that did not oppose the -- the

4     proceeding for six months, and the Court didn't remand

5     the case. There was both Federal question jurisdiction

6     and on the face of the illegal foreclosure complaint.

7     There was an admission that M&T is a New York banking

8     corporation that only accepts service of process in

9     Buffalo New York. Complete diversity existed.

10    Therefore, the case was required to be maintained and a

11    writ of mandamus was filed in the third circuit, but we

12    were never told that the Judge in the district Court

13    owned stock in M&T Bank and had to keep the case. Had

14    the Judge kept the case it would never have been sent

15    back. It would have been dismissed with prejudice in

16    2018.

17           In the meantime, because it was sent back our

18    $50,000 tax refund was used to keep us in the house.

19    M&T never proved we owed a dime in taxes and in the

20    meantime this Court, when the case was remanded from

21    the district court, eCourts again made another mistake.

22    No physical person checked the documents. Our answer

23    in counter claims that were also filed in the district

24    of New Jersey and in the Law Division in 2017, were --

25    were call -- put together as a -- as an opposition and

FILED, Clerk of the Appellate Division, March 02, 2022, A-000749-21 Case 2:21-cv-16397-MCA-JSA Document 26-5 Filed 04/18/22 Page 122 of 158 PageID: 1094

9

1       even though there was an answer in counter claims when

2       it was sent back.  The Gurveys have no ability to know

3       how the dockets are being put together in the Chancery

4       Court.  But this Court had these documents.  This Court

5       had the documents as a matter of law that were filed in

6       2017 by Judicial notice and by the fact that it's in

7       the same Court.  This Judge could not file an order

8       that said that the case between the Gurveys and M&T

9       began on July 5th of 2008 -- 2018.

10                 The case between the Gurveys and M&T began on

11      July -- June 17th, of 2017.  Therefore, under the -- we

12      contend that there has been a gross excess mis -- there

13      has been a gross abuse of discretion because the Court

14      failed to give appropriate deference to the principles

15      governing the Gurvey's motion and their case.  The

16      Gurveys have been deprived of due process of law to

17      make their case against M&T Bank since 2017.  The Law

18      Division didn't hear the case and this Court didn't

19      hear the case.

20                 M&T's claims are totally frivolous.  They

21      have no valid motion to have opened the separate

22      foreclosure action.  No ground under the contract, no

23      ground under New Jersey's entire controversy rule, and

24      no ground under New Jersey's constitution.  And the

25      fact that M&T is a New York bank is no defense that

1     they don't know New Jersey law.

2         We are being harassed. We don't owe them

3     money. They haven't proved they owed the money.

4     Discovery is closed, M&T is collaterally estopped from

5     getting another bite of the apple in this Court. It

6     was the administrative duty of this Court not to take

7     jurisdiction over a separate frivolous, fraudulent

8     action and dismiss the case or send it back to the Law

9     Division so that all of our claims could be heard

10     together. And that our claims for damages -- M&T, if

11     they could prove anything, could apply it against our

12     claims. There is no sense that we should be prejudice

13     by now having the Chancery Division hear the case

14     first. We have the right to control the litigation,

15     not M&T Bank.

16         Now, in the meantime, the -- the -- the third

17     circuit is hearing our motion to vacate all the orders

18     from back to 2018 because M&T failed to disclose that

19     the Judge had owned stock in the bank. This is four

20     years. We're dying here. We're being abused. We're

21     senior citizens. This is -- it's getting us sick. I

22     had a troponin spike in December, I almost passed out.

23     I had to spend two and a half weeks in the hospital.

24         We -- we have no right -- this Judge can't

25     hold that -- that we don't care if we lose the house if

```
 1    we can get damages.  There's no guarantee we're going

 2    to get damages, and there's no adequate remedy at law

 3    for the loss of our house.  This is egregious.

 4    Absolutely egregious.

 5              Anyway, that's my argument.  There is no due

 6    process been granted to us since we started this case.

 7    This Court has to hear our claims and defenses to

 8    foreclosure that started the action.  It's part of the

 9    same Court.

10              THE COURT:  Thank you, Ms. Gurvey.

11              MS. GURVEY:  Thank you.

12              THE COURT:  Thank you.  Mr. Bender, I -- I

13    have a couple of questions for you before you start

14    your argument.  First, regarding --

15              MR. BENDER:  Certainly, Judge.

16              THE COURT:  Thank you.  Ms. Gurvey's

17    contended that when M&T filed the foreclosure action,

18    it claimed that there was no existing lawsuit between

19    the Gurveys and M&T when in fact there was a lawsuit

20    that had been filed in the Law Division by them, by the

21    Gurveys.  What is your response to that contention?

22              MR. BENDER:  Your Honor, it wasn't my firm

23    that filed it, but I think there might have been some

24    confusion because there's a multitude of litigations

25    that are going on in -- related to this property filed
```

FILED, Clerk of the Appellate Division, March 02, 2022, A-000349-21 Case 2:21-cv-16397-MCA-JSA Document 36-7 Filed 04/18/22 Page 125 of 158 PageID: 1097

12

1  by the Gurveys. I believe there's at least three

2  Federal causes of action. I believe there's a Law

3  Division action, and then there's this action. So it

4  might have just been some confusion at that point. But

5  I don't think there was any intent to deceive anyone,

6  or I don't -- I also don't believe that there was any

7  confusion over the amount of cases that had been filed

8  because this has been litigated for years. And

9  everyone is aware of what's been filed and what hasn't

10  been filed in this ca -- in -- in these pending

11  actions.

12          THE COURT: And what were the -- well, this

13  is really a question for Ms. Gurvey. So you'll forgive

14  me please for one moment, Mr. Bender, while I put this

15  question to Ms. Gurvey. Ms. Gurvey, regarding your

16  contention that M&T filed this foreclosure at a time

17  when there was a lawsuit commenced by you and Mr.

18  Gurvey in the Law Division against M&T, what is the

19  impact of the failure of M&T to have disclosed that it

20  was engaged in a lawsuit with -- with you in a separate

21  action in the Law Division?

22          MS. GURVEY: First of all, Your Honor, there

23  was no other action at this time. This is -- this is a

24  red herring. This is ridiculous; okay?

25          THE COURT: No, but I -- I -- I'm sorry,

1    maybe I -- I may have --

2            MS. GURVEY:  The only -- the action is the

3    docket in the Law Division clearly shows that our case

4    was active and in full force on July 5th of 2018.  This

5    is a public docket, it's public record, and there is no

6    excuse for M&T not knowing this information --

7            THE COURT:  Okay.  I --

8            MS. GURVEY:  -- and start -- starting a

9    separate action.

10            THE COURT:  I misspoke.

11            MS. GURVEY:  It's -- the docket is before

12    this Court.

13            THE COURT:  I -- what I had intended to ask

14    is at the time that M&T filed its foreclosure case, it

15    --

16            MS. GURVEY:  Yes.

17            THE COURT:  -- it certified in its complaint,

18    in its foreclosure complaint, that there was no

19    existing action between M&T and the Gurveys.  But what

20    you're saying is in fact there was at that time a

21    pending Law Division case that you had brought against

22    M&T?

23            MS. GURVEY:  Correct.  We filed our lawsuit

24    on June 17th, of 2017.  This is all iterated in Judge

25    Stecher's order of April 16th of last year.  She

14

```
 1        iterates the litigation history and it's all on the

 2        public docket in this Court, Your Honor.

 3                  THE COURT:  Okay.

 4                  MS. GURVEY:  This is all part of the same

 5        Court.

 6                  THE COURT:  My -- my question to you is, if

 7        that had been disclosed, in other words, if -- if M&T

 8        had indicated that it is involved in a litigation with

 9        the Gurveys in the law Division, --

10                  MS. GURVEY:  Correct.

11                  THE COURT:  -- what impact would that have on

12        its foreclosure case in the Chancery Division?

13                  MS. GURVEY:  The foreclosure -- the

14        foreclosure action could not have been filed.  But

15        also, --

16                  THE COURT:  Why -- why do you say that?

17                  MS. GURVEY:   -- if that --

18                  THE COURT:  Why do you say that?

19                  MS. GURVEY:  Because -- because under New

20        Jersey's entire controversy doctrine, all claims

21        related to our action had to be filed in the same

22        lawsuit.  And the Law Division had im re an equity

23        jurisdiction to adjudicate any foreclosure claim from

24        M&T --

25                  THE COURT:  Okay.
```

```
 1              MS. GURVEY:  -- in that same action.

 2              THE COURT:  I understand.

 3              MS. GURVEY:  There was no need to open a

 4   separate lawsuit.  And in fact, it was prescribed by

 5   the New Jersey entire controversy doctrine, which is

 6   New Jersey Court Rule 4:30A.

 7              THE COURT:  Thank you.

 8              MS. GURVEY:  They could not open a separate

 9   action or make these false attestations.  These

10   attestations were made to deceive the Court and give

11   them another bite at the apple.  They -- if they wanted

12   to file this action and they specifically, including

13   Mr. Bender here, told Judge Bartels that they weren't

14   going to file an action, they should -- they

15   automatically should have known that they needed to

16   file it in the same action.

17              THE COURT:  Okay.  Thank you.

18              MS. GURVEY:  They intended to deceive the

19   Court and did so.

20              THE COURT:  Thank you, Ms. --

21              MS. GURVEY:  They -- because that -- they had

22   no right to file that action and no right for this

23   Court to take separate jurisdiction over this action,

24   say for eCourts that doesn't have any physical clerks.

25              THE COURT:  Thank you, Ms. Gurvey.  Back to
```

1    you, Mr. Bender. The -- the contention is, had M&T

2    indicated in its foreclosure complaint that it was

3    engaged in a litigation with the Gurveys in another jur

4    -- matter in the Law Division, what impact would that

5    have had on the filing by M&T of this foreclosure

6    action?

7                MR. BENDER:  Your Honor, the answer is none

8    whatsoever.  As your -- as Your Honor's well aware,

9    foreclosures have to be brought in the Chancery

10   Division under an F docket.  That's Court rules.  The

11   cha -- the foreclosure could not have been brought in

12   the Law Division.  That's not how the Court rules work.

13   It could not have possibly been done.  So the answer

14   is, no impact.  Even if it would have been disclosed in

15   the 4:5-1 certification, it still would have had to

16   been filed in the foreclosure action.  Not to mention,

17   that this claim has been raised time and time again in

18   this Court and before Judge Stecher in the Law

19   Division.  So this is not a new claim.  This wouldn't

20   fall under a 450 -- under a 4:50 analysis.  This claim

21   has been adjudicated at length, at nauseam.  And --

22               MS. GURVEY:  Excuse me, Your Honor, the New

23   Jersey's constitution specifically gives the Law

24   Division jurisdiction over equitable claims and in rem

25   jurisdiction in a foreclosure proceeding.

```
 1              THE COURT:  Thank you, Ms. Gurvey.

 2              MS. GURVEY:  If -- if Mr. Bender does not

 3    know that, he should read our papers and look at the

 4    ste -- look at the constitution.  It's a myth.

 5              THE COURT:  Okay.  Thank you.  I'm -- I'm

 6    going to give Mr. Bender the floor now to make his

 7    arguments, and then you'll have a right to respond to

 8    them in their entirety.

 9              MR. BENDER:  While it seems consequential, I

10    feel like I should correct this for the record.  The

11    Gurveys keep making some indication that I made a

12    representation before Judge Bartels.  They have not

13    produced a transcript of any of this.  The

14    representation wasn't made.  If they thought the

15    representation was made, they easily could have -- they

16    could have ordered the Court transcript.

17              Mrs. Gurvey was an attorney at some point, so

18    she knows how to do all of these things.  That wasn't

19    done.  The reason that wasn't done is because no

20    representation was made.  Beyond that, this is a 4:50

21    motion.  There has been no reference to any of the

22    standards from 4:50 in anything Mrs. Gurvey said.  Mrs.

23    Gurvey simply repeated the same arguments that she made

24    and that Mr. Gurvey has made numerous times over

25    throughout this entire litigation.  Nothing new has
```

18

1    been brought to the Court's attention. Nothing that

2    would fall under any element of 4:50 had been brought

3    to the Court's attention. All of this was addressed at

4    nauseam throughout this entire litigation. There is no

5    basis to revisit any of the Court's rulings in this.

6         The Gurveys keep mentioning due process. The

7    Gurveys have an open act -- an open action in Federal

8    Court, they're trying to challenge closed actions in

9    Federal Court. They have an open action in the Law

10   Division. What due process have they been deprived of?

11   They've constantly filed throughout this. They've had

12   access to the Courts. They've had their day, they made

13   their argument. There's no basis to grant a Rule 4:50

14   -- 50-1A through F motion in this case, which is

15   exactly what they filed.

16        For those reasons, we respectfully request

17   that the motion be denied.

18        THE COURT: Thank you.

19        MR. BENDER: And for those put in our papers,

20   Your Honor.

21        THE COURT: Thank you, Mr. Bender. All

22   right. Ms. -- Ms. Gurvey, you get the last word.

23        MS. GURVEY: Thank you, Your Honor. Number

24   one, the transcripts had been produced for the Court

25   from -- from Mr. Bender's -- from the sessions. Okay?

1    My husband has gotten them and they are in the file.

2         Number two -- my husband will tell you

3    exactly what they say, but they are -- there is a

4    transcript, I believe. Number two, -- no, there is no

5    transcript, Scott? I'm sorry? Excuse me?

6         MR. GURVEY: No. Your Honor, -- Your Honor,

7    may I clarify that -- that for just a second. The --

8    for -- for reasons that have never been clear to me,

9    the docket in the Law Division does not begin in June,

10   it begins a few months later. The transcript office

11   has so far been unable to ascertain the initial --

12   there were -- there were a couple of initial starts to

13   this case which was filed by order to show cause.  I

14   know Mr. Bender, I think, asked for an adjournment of

15   the first meeting. There was then a second one.  They

16   have not been able to locate the tapes of any of this

17   material up to the point -- I think it's in October

18   where the electronic docket begins.

19        So I have -- have not -- I have cited one of

20   Mr. Bender's written oppositions, his opposition --

21        MS. GURVEY: (indiscernible).

22        MR. GURVEY: -- and his -- it's his paper

23   moving for dismissal of our -- of our complaint.  Of

24   our original complaint. He does talk there about the

25   fact that the -- the temporary restraints that we ask

| 1 | for were unnecessary because -- because M&T Bank had |
| 2 | not taken the threatened action of the foreclosure. |
| 3 | But he does use -- he does use the qualification to be |
| 4 | fair and -- that -- and they would not until the next |
| 5 | -- so far as up until the next hearing or something. |
| 6 | So there is -- there is qualifying language there. |
| 7 | It's not that Mr. Bender did not make an open ended |
| 8 | statement to -- in writing, and we just don't seem to |
| 9 | have -- although the transcript office is -- has looked |
| 10 | at it before, we don't seem to have that material. |
| 11 | THE COURT: Thank you, Mr. Gurvey. Anything |
| 12 | else? |
| 13 | MR. GURVEY: Just one more thing. At the |
| 14 | point of -- of the filing of the foreclosure proceeding |
| 15 | in the Chancery Court, there -- there were no other |
| 16 | lawsuits. None of the federal actions had been |
| 17 | started. So the first -- the first action was the -- |
| 18 | the motion by -- by order to show cause that we filed |
| 19 | in 2017. The second motion into this mix would be the |
| 20 | foreclosure action. And, you know, when -- I -- I've |
| 21 | heard what Mr. Bender said about the same things coming |
| 22 | up over and over again, that even these questions about |
| 23 | the certification with all due respect, while they did |
| 24 | in the papers they have not been subject to any |
| 25 | discussion in this Court until today. And the -- and |

1    as to what would have happened, we don't know what

2    would have happened.

3                    THE COURT:  Well, Mr. Gurvey, there's a --

4                    MR. GURVEY:  Obviously, had --

5                    THE COURT:  There's a -- a issue that perhaps

6    explains it.  And that is that a foreclosure action may

7    only be brought in the Chancery Division.  And it --

8    it's uniquely addressed in the Chancery Division.

9    They're actually filed through the office of

10   foreclosure.  It's an administrative procedure.  They

11   are then sent to the Superior Court if they're

12   contested matters.  They are not related to any other

13   matters.  So the fact that yes, you may have had a Law

14   Division action against this bank for issues related to

15   the loan documents or the obligations as you alleged of

16   M&T Bank, that would not impact the fact that the

17   foreclosure action that's in this Court had to be

18   brought in the -- through the Office of Foreclosure and

19   then transfer here to the cha -- Chancery Division.

20   And is not the same as the case in the Law Division.

21                    Yes, the Law Division under out constitution

22   can make equitable determinations.  It can provide

23   injunctive relief, but there are certain areas of the

24   law and certain types of actions that are mandated to

25   solely be in Chancery, and this is one of them.  That's

```
 1    why I was asking --

 2              MR. GURVEY:  I un --

 3              THE COURT:  -- Ms. -- Ms. Gurvey.

 4              MR. GURVEY:  I understand, Your Honor.  But

 5    just -- just, if I may?  The -- the -- the -- the issue

 6    here is that this has been decided in Chancery as an

 7    uncontested foreclosure action and we have not been

 8    allowed in Chancery to present a defense being that

 9    there is no default under the terms of the contract.

10    It's a valid defense.  This is the exact same issue we

11    raised at the forefront in the Law Division.  And so

12    the -- the net result of this situation has been that

13    we had not yet had an opportunity to address that issue

14    in the Law Division and we have not been afforded the

15    opportunity to address it in the Chancery Division.

16              If the question is going to be whether or not

17    this is a contested -- whether or not the determination

18    that this is an uncontested action in Chancery was a

19    correct determination and I -- I can only say that --

20    that when you consider the record of this case, it

21    seems apparent to me that this issue has been contested

22    even before it was filed it's been contested.

23              THE COURT:  Well, --

24              MS. GURVEY:  Excuse me, Your Honor.  In

25    addition to which, M&T has falsely alleged we did not
```

1    have insurance.  We were just paid $21,000 by the

2    insurance during Hurricane Ida for some roof damage,

3    and M&T has refused to endorse the check.  They have

4    lied, and lied, and lied to this Court and in ad

5    infinitum.  And the other problem we have here is that

6    the Appellate Division granted us leave to appeal the

7    entry of default just on the grounds that Scott said.

8    That we were deprived of the right both in the Law

9    Division and in this Court to present our defenses

10   germane to foreclosure.

11           After that, the Court *sua sponte* entered a

12   default judgement based on further fraud by Mr.

13   Gerbino.  Okay?  We were not given another hearing

14   before the entry of the -- the default judgement was

15   entered.  Therefore, this is a *sua sponte* order in

16   violation of Link versus Wabash Railroad Corporation,

17   370 U.S. 626, 1962.  And should not have been entered

18   *sua sponte* after we were already granted leave to

19   appeal.

20           THE COURT:  But the -- the answer was not

21   filed; right?

22           MS. GURVEY:  The answer was filed, Your

23   Honor.  It was filed.  And the --

24           MR. GURVEY:  Your Honor, -- Your Honor, the

25   answer was -- the answer -- the answer was filed in the

| | |
|---|---|
| 1 | Federal District Court, I think, first. It was filed |
| 2 | actually by M&T as an attachment to some of their |
| 3 | papers here in Chancery. It was filed again by me in |
| 4 | Chancery. The fee was paid to the Chancery Court for |
| 5 | the -- for the filing of an answer and counter claims. |
| 6 | And of course, the same arguments were filed in the Law |
| 7 | Division of the Superior Court. So, I mean, I can't |
| 8 | tell you that -- that everything was done and there was |
| 9 | confusion because the remand from the District Court, |
| 10 | but it was on appeal. At what point did it have to be |
| 11 | filed with the fee paid. I mean, yeah, there's some |
| 12 | confusion. There may be some -- some dates going on |
| 13 | here, you know, that we're not sure of. But I would |
| 14 | quickly make just the two points. |
| 15 | Number one, there's no question the document |
| 16 | was in -- in the hands of M&T and in the hands of this |
| 17 | Court. There was no question but the fees had been |
| 18 | paid. You know, in the -- in the proper fashion by |
| 19 | this Court. So there -- there is an answer. And |
| 20 | second, -- and -- and the other thing is that while |
| 21 | we're going to argue about dates and -- and if -- if |
| 22 | you, you know, there could be that if you hold to |
| 23 | whenever you start the time clocks or whatever the -- |
| 24 | missed a few days here or there, the record repeatedly |
| 25 | instances in which M&T filed the -- its motion out of |

25

```
1    time.  Didn't come to a hear -- filed a day before a

2    hearing was scheduled and said that they didn't get any

3    notice of the hearing and could they have an extension

4    on the hearing.  And this Court has been very generous

5    in granting all of that.  With --

6            As far as we're concerned this Court has

7    been, "You didn't file an answer in this Court within X

8    number of days, that's it.  We're taking your house and

9    we're not hearing anything else."  And -- and with all

10   due respect, Your Honor, that's not justice.

11           THE COURT:  Okay.

12           MS. GURVEY:  And Your Honor, there could be

13   no except -- no jurisdiction assumed in the Chancery

14   Court based on those fraudulent documents.  If eCourts

15   had been taken -- had -- had a clerk inspecting the

16   documents, the documents wouldn't have been rejected.

17   Because those certifications are required by the law.

18   That there is no existing lawsuit.

19           THE COURT:  Okay.  Thank you, Ms. Gurvey.

20   Mr. Bender, what was the timing regarding the default

21   and the -- the judgement?  The request to enter

22   judgement?

23           MR. BENDER:  I can pull the eCourts, Your

24   Honor, but --

25           THE COURT:  Okay.
```

| | |
|---|---|
| 1 | MR. BENDER: -- I think this is all -- this |
| 2 | was all addressed in their motion -- the Gurvey's |
| 3 | motion to vacate default, and that was denied. The |
| 4 | Gurv -- Gurvey's motion for reconsideration when that |
| 5 | was denied. And now on this fourth motion, the request |
| 6 | for final judgement I believe is -- was filed, I |
| 7 | believe, at least 30 days prior to Your Honor entering |
| 8 | it. But let me get the -- let me pull it real quick so |
| 9 | that I don't say anything that's incorrect. |
| 10 | THE COURT: And while you're looking at that |
| 11 | I'm going to actually have you back up and go through |
| 12 | the dates of when default was entered and also the |
| 13 | question of a meritorious defense. |
| 14 | MS. GURVEY: Default was entered on December |
| 15 | 7th, Your Honor. |
| 16 | THE COURT: Of what year? |
| 17 | MS. GURVEY: The -- of 2021. |
| 18 | THE COURT: December -- |
| 19 | MS. GURVEY: That's the -- oh, you -- the |
| 20 | entry of default, excuse me. That -- that I don't have |
| 21 | available. But the default judgement was entered on |
| 22 | December 7th, after on November 12th the Appellate |
| 23 | Division granted relief to appeal the entry of default. |
| 24 | I think it was sometime in September. |
| 25 | MR. BENDER: I'm looking through it. |

```
 1              THE COURT:  Thank you.  Because I don't
 2    understand how the Appellate Division could have
 3    entered a -- an order permitting an appeal before final
 4    judgement was entered.
 5              MR. GURVEY:  Well, they did -- they did grant
 6    leave to file an interlocutory appeal.
 7              MS. GURVEY:  They did, on -- on November
 8    12th.
 9              THE COURT:  Before final --
10              MS. GURVEY:  After which a sua sponte order
11    to -- a default judgement was entered by this Court
12    with no further hearing.
13              MR. GURVEY:  And with -- and again, Your
14    Honor, with -- we did inform you of that situation when
15    we asked that you stay these proceedings pending that
16    action -- pending that action in the Appellate
17    Division.
18              THE COURT:  And what order did the Appellate
19    Division stay?
20              MR. GURVEY:  No.  No, I'm sorry.  The
21    Appellate Division granted our motion for leave for
22    interlocutory appeal.
23              MS. GURVEY:  The entry of (indiscernible).
24              MR. GURVEY:  (Indiscernible) already had
25    pending a motion for a stay with you, with this Court,
```

28

```
 1    and we informed the Court at the argument about that
 2    stay what the Appellate Division had done in the
 3    interim.  In other words, that it had granted a -- an
 4    interlocutory appeal.  And you -- you also -- but you
 5    still denied the stay.
 6              MR. BENDER:  Your Honor, default was entered
 7    by court order on June 17th, 2021.
 8              THE COURT:  Okay.
 9              MR. BENDER:  What was your other date you
10    wanted, Judge?
11              THE COURT:  I -- and I think Ms. Gurvey
12    answered this.  When final judgement was entered, on
13    December 7th, 2021.
14              MS. GURVEY:  Yes, and the -- the leave to
15    appeal entry of default was granted by the Appellate
16    Division on November 12th.  Then we moved for a stay
17    based on that order.  And the -- this Court denied the
18    stay.  And then in -- the same -- the next day entered
19    a default judgement on December 7th.  So it denied the
20    stay on the 6th, and then on the morning of December
21    7th, entered default judgement with a sua sponte
22    without any further hearing.
23              THE COURT:  And what was the basis of the
24    motion to set aside the default?  What was the
25    meritorious defense?
```

| | |
|---|---|
| 1 | MR. GURVEY: Your Honor, we did write the -- |
| 2 | the -- the -- a lengthy description of the -- of the |
| 3 | events that had led us to that point. Including |
| 4 | presenting still, I believe, another copy of the answer |
| 5 | and we -- we informed the Court that we had -- you |
| 6 | know, we had all good intent and all in good faith had |
| 7 | presented the answer and cross-complaint. And that the |
| 8 | meritorious defenses by the definition of default which |
| 9 | is in the -- in the mortgage agreement we signed with |
| 10 | the Hudson City Savings Bank in 2002. The -- the M&T |
| 11 | Bank did not have grounds for a default. |
| 12 | And specifically, the default was limited to |
| 13 | the payment of -- of principal and interest, and in |
| 14 | this case we had been paying principal and interest |
| 15 | religiously without missing a payment up until the time |
| 16 | when the M&T Bank stopped taking it. Refused taking |
| 17 | our money because we were still in the dispute over |
| 18 | property taxes that M&T said it had paid on behalf of |
| 19 | the property that we owed it. And we said they did |
| 20 | not, and that was -- that was what was pending in the |
| 21 | Law Division. It was the same argument. |
| 22 | MS. GURVEY: Excuse me, Your Honor, when you |
| 23 | entered the default judgement, the judgement basically |
| 24 | comes down with an accounting. $671,000 was written to |
| 25 | be owed *sua sponte.* We don't owe these taxes. Our tax |

| | |
|---|---|
| 1 | surplus was used to keep us in the house after we lost |
| 2 | the buyer. M&T never proved that we -- that there was |
| 3 | any tax deficiency. Therefore, they're nothing more |
| 4 | than a good samaritan. |
| 5 | If they paid any money to Montclair Township |
| 6 | and they did not produce one canceled check that they |
| 7 | did, their remedy is against Montclair Township. The |
| 8 | Township is not going to pay us back. We didn't owe |
| 9 | any taxes. That was told to M&T by the Law Division |
| 10 | judge and -- and to this day we owe no taxes. There's |
| 11 | never been a deficiency lien entered by Montclair |
| 12 | Township. If M&T advanced any money, they needed to |
| 13 | produce canceled checks. They never produced them in |
| 14 | discovery and it was wrong of this Court to *sua sponte* |
| 15 | enter that we owe taxes. We don't owe any; okay? We |
| 16 | don't owe penalties. We don't owe fees. We don't owe |
| 17 | charges. We don't owe fines because we were never in |
| 18 | default. |
| 19 | They have added on an additional $300,000 |
| 20 | over the -- the mortgage loan that we certainly don't |
| 21 | owe. And there's a question as to whether or not when |
| 22 | they rejected the payments and they're in breach of |
| 23 | contract, and they try to refund payments that were |
| 24 | already cashed and we didn't take them back, whether |
| 25 | they have a right to -- to get those monies collected |

FILED, Clerk of the Appellate Division, March 02, 2024, A-000249-22   Case 2:21-cv-16397-MCA-JSA   Document 26-2   Filed 04/18/22   Page 144 of 158 PageID: 1116

31

```
 1      now.  But we also lost a buyer for the house.  We were

 2      forced to stay in the house and now it's COVID, and now

 3      we do want to stay in the house.

 4                 THE COURT:  Mr. Bender, --

 5                 MS. GURVEY:  But they never proved that --

 6      this Court could not enter an accounting.

 7                 THE COURT:  Mr. Bender --

 8                 MS. GURVEY:  Sua sponte in the default

 9      judgement.

10                 THE COURT:  Thank you, Ms. Gurvey.  Mr.

11      Bender, it sounds like the Gurveys are setting forth

12      what they had raised as their meritorious defenses to

13      the foreclosure when they made their motion to vacate

14      the final judgement.  And either Mr. Gerbino or you

15      addressed those issues.

16                 MR. BENDER:  Correct, Your Honor.  That's --

17      we -- we made the argument and we made it, and we still

18      believe the argument that there is nothing that allowed

19      the Gurveys not to pay their taxes.  That's just --

20      that's the mortgage.  As Your Honor's seen, probably

21      thousands of mortgages, there is no mortgage that

22      allows a borrower to stop paying their taxes and just

23      continue to mosey along.  And then once --

24                 MS. GURVEY:  Your Honor, we were in Tax

25      Court.
```

1        MR. BENDER: Ms. -- Ms. Gurvey, I didn't

2    interrupt you. I request that you not interrupt me,

3    please.

4        MS. GURVEY: Okay. We were in the Tax Court

5    -- (indiscernible).

6        THE COURT: Yeah, excuse me. Excuse me.

7    First of all, Mr. Bender, I will address the

8    proprieties of this proceeding. So please don't --

9        MR. BENDER: I apologize, Your Honor.

10        THE COURT: That's quite all right. And Ms.

11    Gurvey, please respect the Court and Mr. Bender. Mr.

12    Bender, was the basis of the foreclosure the failure to

13    pay the taxes?

14        MR. BENDER: Initially, Judge. That was the

15    basis. And then the Gurveys would pay -- would pay

16    with tendered funds that weren't go -- that weren't

17    full, so then they stopped being accepted. And then it

18    became the default. But initially, it was that the

19    taxes weren't tendered as part of the monthly loan

20    payments.

21        THE COURT: Okay.

22        MR. BENDER: And these were the same exact

23    arguments that were raised in the prior proceedings.

24        THE COURT: Understood. So I have not heard

25    anything today that is new. But Mr. Gurvey, Ms.

1    Gurvey, is there anything that you have not raised in

2    the past that you claim in the basis for this Court to

3    consider setting aside the final judgement?

4              MR. GURVEY:  I think that if the Court were

5    to read the mortgage agreement, it might see that

6    there's an issue here suitable for trial in the

7    interpretation of the mortgage agreement.  I can see

8    that whatever mortgage agreement that M&T Bank writes

9    may be worded differently.  But I was not a customer of

10   M&T Bank, I was a customer of the Hudson City Savings

11   Bank.

12             I have read this mortgage agreement front,

13   back, from the right, from the left, from the top, and

14   from the bottom.  And I do not believe that the -- that

15   we default the mortgage by not paying property taxes.

16   It becomes -- it becomes another element of the case

17   that the property taxes were actually going into escrow

18   under supervision of the Tax Court Judge at the time.

19   So what M&T was asking me to do was double pay.  And

20   that M&T knew all of this and agreed to all of it in

21   writing.  Again, where I permitted to present my

22   evidence, my documents at trial.  There is a

23   justiciable issue here.  And we have not been allowed

24   --

25             MS. GURVEY:  Excuse me, Your Honor, M&T --

```
 1                  MR. GURVEY:  -- to present this defense.

 2                  THE COURT:  Okay.  I understand.

 3                  MS. GURVEY:  M&T also closed.  They -- they

 4        performed by promissory estoppel creating another

 5        binding contract.  They closed the optional escrow

 6        account to allow us to get our tax refunds from

 7        Montclair in 2016, during the Tax Court litigation that

 8        they were invited to join.

 9                  THE COURT:  Okay.

10                  MS. GURVEY:  They then closed the tax escrow

11        account, created another binding contract, and then

12        reopened it without telling us.  So Montclair walked

13        out of the mediation --

14                  THE COURT:  Thank you.

15                  MS. GURVEY:  -- talks, and we had to wait

16        another four years to get to settle with Montclair.  At

17        which point a $50,000 surplus was all -- was virtually

18        all used up except for $15,000 to pay for the time that

19        we stayed in the house.

20                  THE COURT:  Thank you.

21                  MS. GURVEY:  In addition to which --

22                  THE COURT:  Thank you.

23                  MS. GURVEY:  -- so we -- M&T wanted us to

24        double pay.  They already closed the agreement and they

25        breached that agreement.
```

FILED Clerk of the Appellate Division, March 2, 2022, A-000746-21   Case 2:21-cv-16397-MCA-JSA   Document 26   Filed 04/18/22   Page 148 of 158 PageID: 1120

35

```
 1              THE COURT:  Thank you, Ms. Gurvey.

 2              MS. GURVEY:  Mr. -- Mr. Bender should be

 3    sanctioned.  This is frivolous.

 4              THE COURT:  That's improper.

 5              MS. GURVEY:  Okay?

 6              THE COURT:  That's improper, Ms. Gurvey,

 7    please.  Mr. Bender, --

 8              MS. GURVEY:  Okay.  This is ridiculous.

 9              THE COURT:  Mr. -- Mr. Bender, I'll hear you

10    as to these arguments regarding the taxes and that they

11    -- although I know they've been made before, and I had

12    denied the motion to vacate judgement, much of this is

13    being repeated.  But I'd like for you one last time to

14    indicate why the arguments regarding the payment of the

15    taxes don't -- do not raise a meritorious defense for

16    this Court to consider setting aside the final

17    judgement.

18              MR. BENDER:  When Your Honor looked at the

19    motion to vacate, we attached all of the documentation,

20    including the mortgage.  What the Gurveys are now

21    alleging is that they -- they want a trial.  They want

22    to produce all their evidence in trial.  Well, they had

23    a chance in the motion to vacate to produce all the

24    evidence that they wanted.  They produced that evidence

25    to Your Honor.  Your Honor looked at whatever their
```

```
 1    alleged evidence was and found that there was no
 2    meritorious defense.  Based on a simple reading of the
 3    mortgage, and based on Your Honor's knowledge of
 4    foreclosure law and tax law in the State of New Jersey,
 5    there's no basis to switch that.
 6             Now, you haven't heard anything new, you
 7    haven't heard anything that would change that opinion.
 8    What you've heard is a reiteration of the same things
 9    that have already been heard with some flare in there
10    and some argument.  But there has been nothing new that
11    you've seen that would change the argument.  There's no
12    meritorious defense based on a simple reading of the
13    mortgage.  And just because the Gurveys say that they
14    might have something at trial, and they might be
15    holding something back, well the time was -- the time
16    has passed.  Any evidence they should have produced it
17    and you would have seen it.  And if you -- Your Honor
18    believed that there was something that was warranted,
19    Your Honor would have vacated the default.
20             THE COURT:  Thank you, Mr. --
21             MR. BENDER:  Your Honor didn't --
22             THE COURT:  Thank you.  Well, I certainly --
23             MR. BENDER:  Thank you, Your Honor.
24             THE COURT:  -- the property taxes are part of
25    the mortgage payments, and this argument has been made
```

```
 1    in the past.  So because I have heard nothing new and

 2    this really was not --

 3              MS. GURVEY:  Excuse me, Your Honor, you don't

 4    think it's new that Mr. Bender --

 5              THE COURT:  -- couched as a motion to --

 6    Okay.  I'm -- I'm going -- I've -- I've heard the

 7    arguments.  I'm denying the motion.  I don't find that

 8    there's anything new in regard to the motion to vacate

 9    the judgement.  And I don't find that under Rule 4:50

10    that any of the standards have been met to set aside

11    the final judgement.  So I will deny the motion again.

12    And I thank you all for your thoughtful arguments.

13    Have a good weekend, thank you.  Bye, now.

14              MR. BENDER:  Thank you.

15              MR. GURVEY:  Thank you, Your Honor.

16              (Proceeding concluded at 3:24:22 p.m.)

17                        * * * *

18

19

20

21

22

23

24

25
```

1        CERTIFICATION

2

3        I, Dara Bartosiewicz, the assigned transcriber, do

4    hereby certify the foregoing transcript of proceedings

5    on CourtSmart, Index No. from 2:34:23 to 3:24:22, is

6    prepared to the best of my ability and in full

7    compliance with the current Transcript Format for

8    Judicial Proceedings and is a true and accurate non-

9    compressed transcript of the proceedings, as recorded.

10

11        **/s/ Dara Bartosiewicz**              AD/T 698
12          Dara Bartosiewicz                 AOC Number
13
14
15
16        Phoenix Transcription LLC            3/1/2022
17          Agency Name                         Date

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

March 17, 2022

VIA ECF
Counsel of Record

VIA CERTIFIED MAIL
H. Scott Gurvey
Amy Gurvey
315 Highland Avenue
Upper Montclair, New Jersey 07043

## LETTER ORDER

**Re:   M&T Bank v. H. Scott Gurvey, et al.**
       **H. Scott Gurvey, et al. v. M&T Bank, Inc., et al.**
       **H. Scott Gurvey, et al. v. Hon. Glenn A. Grant, et al.**
       **Civil Action Nos. 18-12702, 20-7831, 21-16397**

Dear Litigants:

The Court is in receipt of Plaintiffs Amy Gurvey's and H. Scott Gurvey's ("Plaintiffs") Request for an "Order to Show Cause to Vacate Orders of Disqualified Judge, Consolidate DNJ Cases, and to Schedule OSC Hearing," which Plaintiffs simultaneously filed in each of the above cases. Plaintiffs request the following relief: (1) vacatur of all orders entered by the Honorable Susan D. Wigenton, U.S.D.J. ("Judge Wigenton") in the above cases;[1] (2) consolidation of each

---

[1] Plaintiffs' requested relief pertains to three actions formerly before Judge Wigenton, each of which was reassigned to the undersigned in February or March, 2022.

In the first action, M&T Bank ("M&T") filed a complaint against Plaintiffs in New Jersey Superior Court ("Superior Court") on July 5, 2018, seeking to foreclose on property owned by Plaintiffs. See M&T Bank v. Gurvey, No. 18-12702 (D.N.J.) (the "Foreclosure Action"), ECF No. 1.1. After Plaintiffs removed the Foreclosure Action, Judge Wigenton remanded it for lack of subject matter jurisdiction on March 29, 2019, id., ECF No. 15, and denied Plaintiffs' motion for reconsideration on April 1, 2019, id., ECF No. 19.

Second, Plaintiffs filed a complaint on June 25, 2020 against M&T and its attorneys, alleging federal statutory and pendent state law claims arising from conduct related to the foreclosure. See Gurvey v. M&T Bank, Inc., No. 20-7831 (D.N.J.) (the "First Federal Action"), ECF No. 1. On December 17, 2020, Judge Wigenton abstained from the First Federal Action pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), based on the existence of parallel state actions concerning the same subject matter. Id., ECF No. 21.

Third, on September 1, 2021, Plaintiffs filed a new complaint seeking, among other things, injunctive relief declaring the "eCourts" system utilized in the New Jersey state court system unconstitutional. See Gurvey v. Grant, No. 21-

case for further proceedings; and (3) an immediate stay of a sheriff's sale on Plaintiffs' house, currently scheduled for May 5, 2022.[2] Under Local Civil Rule 65.1(a), a plaintiff may "apply for an order requiring an adverse party to show cause why a preliminary injunction should not issue" upon a "clear and specific showing by affidavit . . . of good and sufficient reasons why a procedure other than by notice of motion is necessary."

First, Plaintiffs' request for an immediate stay of the sheriff's sale is denied. Plaintiffs do not clearly articulate a basis for an injunction but appear to argue that Judge Wigenton's order to remand the Foreclosure Action must be vacated, and that had the Foreclosure Action not been remanded, the New Jersey Superior Court could not have entered a judgment of foreclosure.[3] See Affidavit in Support of Order to Show Cause ("Gurvey Aff.") ¶¶ 14, 16, ECF No. 14. However, once a case is remanded to state court for lack of subject matter jurisdiction, this Court lacks jurisdiction to review the remand order. Agostini v. Piper Aircraft Corp., 729 F.3d 350, 352–53, 355-56 (3d Cir. 2013); see also 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."). Thus, the Court has no ability to reconsider or vacate Judge Wigenton's Order remanding the Foreclosure Action.[4] Plaintiffs' application is denied as it pertains to the Foreclosure Action or the pending sheriff's sale.

Second, the Court construes Plaintiffs request to vacate prior orders in the First Federal Action as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6), which permits relief from judgment for "any other reason that justifies relief." See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863-64 (1988). As it pertains to the First Federal Action, Plaintiffs have provided no explanation, much less a "clear and specific showing," as to why an immediate preliminary injunction is necessary. The Court will therefore decide Plaintiff's Motion in the ordinary course. The defendants named in the First Federal Action are directed to respond to Plaintiffs' motion no later than **April 1, 2022**, and Plaintiffs shall file any reply by **April 8, 2022.**

Third, with respect to the Second Federal Action, Plaintiffs asks the Court to vacate Judge Wigenton's order denying its motion for an preliminary injunction stating that New Jersey's eCourts filing system unconstitutional. While Plaintiffs have submitted an affidavit making vague allusions to errors made by "eCourts officers," Gurvey Aff. ¶¶ 2, 15, they have failed to clearly and specifically explain the alleged irreparable harm they will suffer unless the Court immediately grants relief.[5] See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff

---

16397 (D.N.J.) (the "Second Federal Action"), ECF No 1. On September 8, 2021, Judge Wigenton denied Plaintiffs' motion for a preliminary injunction in the Second Federal Action for lack of irreparable harm. Id., ECF No. 4.

[2] Plaintiffs' request is docketed at ECF No. 29 in the Foreclosure Action, ECF No. 55 in the First Federal Action, and ECF No. 14 in the Second Foreclosure Action. For ease of reference, the Court hereafter refers only to the filings electronically docketed in the Second Federal Action.

[3] Plaintiffs have submitted a Final Judgment of Foreclosure entered by the Superior Court on December 7, 2021. See ECF No. 14.1, at 111.

[4] The Court also lacks jurisdiction to directly review or vacate the Judgment of Foreclosure under the Rooker-Feldman doctrine. See Gage v. Wells Fargo Bank, NA AS, 521 F. App'x 49, 51 (3d Cir. 2013).

[5] Plaintiffs appear to argue that the alleged errors resulted in the entry of a default foreclosure judgment against then. Gurvey Aff. ¶ 15. Again, to the extent Plaintiffs ask to vacate the Judgment of Foreclosure based on alleged errors committed in Superior Court, this Court lacks jurisdiction to grant such relief.

seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Plaintiffs' request for an order to show cause is therefore denied as it pertains to the Second Federal Action, without prejudice to Plaintiffs renewing their substantive arguments once the defendants named in the Second Federal Action have been properly served[6] and the case progresses.

Finally, Plaintiffs' request to consolidate the Foreclosure, First Federal, and Second Federal Actions is denied as moot, as only the Second Federal Action is presently active and pending before this Court.

* * *

In sum, Plaintiffs' request for issuance of an order to show cause is denied with respect to the Foreclosure Action and Second Federal Action. With respect to the First Federal Action, the Court construes Plaintiffs' application as a motion for relief from judgment pursuant to Rule 60(b) and directs the defendants named therein to respond by **April 1, 2022**. Plaintiffs shall file any reply by **April 8, 2022**. Plaintiffs' requests for consolidation and to enjoin a pending sheriff's sale are denied. The Clerk of Court is directed to serve a copy of this Order on Plaintiffs via Certified Mail.

### SO ORDERED.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[6] No defendant has yet appeared in the Second Federal Action.

3

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies
with the typeface requirements of Fed. R. App. 32(a)(5)(A), because it is
written in 14-point Calisto MT Font, and with the type-volume limitations of
Fed. R. App. 32(a)(7)(B), because it contains 7,006 words, excluding the
portions excluded under Fed R. App. P. 32(a)(7)(iii). This count is based on
the word count feature of Microsoft Word.

/amygurvey/

## CERTIFICATE OF SERVICE

Amy R. Gurvey, the Co-Appellant-Petitioner *Pro Se* herein and over the age of 18, certifies that on April 17, 2022, she served a true and accurate copy of the Petition Seeking a Writ of Mandamus per the Third Circuit 3-22-22 order by depositing a true and accurate copy of same, postage prepaid, in a mailbox duly maintained by the U.S. Postal Service.

The envelopes were addressed as follows:

Richard Gerbino, Esq.
Schiller, Knapp, Lefkowitz & Hertzel, LLP
15 Cornell Road
Latham, NY 12211

Office of the NJ Attorney General
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625/08611

Reed Smith, LLP
506 Carnegie Center Suite 300
Princeton, New Jersey 08540

cc:    Clerks Office PRO SE
United States District Court District of New Jersey
50 Walnut Street  4th Fl
Newark, NJ  07101
Attn:  Hon. Madeline Cox Arleo

Amy R. Gurvey
Appellant/Petitioner PRO SE

CLERK
U.S. DISTRICT COURT
NEW JERSEY
RECEIVED

2022 APR 18  P 6: 01